# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1231

_____

United States of America,          *
                                   *
              Appellee,            *
                                   *   Appeal from the United States
      v.                           *   District Court for the
                                   *   District of Nebraska.
Silvia Ochoa-Gonzalez,             *
                                   *
              Appellant.           *

_____

Submitted: October 22, 2009
Filed:  March 25, 2010

_____

Before COLLOTON and BENTON, Circuit Judges, and PIERSOL,[1] District Judge.

_____

BENTON, Circuit Judge.

Silvia Ochoa-Gonzalez was arrested following an immigration enforcement operation.  She moved to suppress her incriminating statements on the ground that they were obtained in violation of her *Miranda* rights.  The district court granted the motion in part and denied it in part.  Ochoa-Gonzalez entered into a conditional plea agreement, pleading guilty to aggravated identity theft, but preserving the right to appeal the district court's denial of her motion to suppress.  In addition to addressing the motion to suppress, she also argues that a recent Supreme Court decision

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

invalidates her guilty plea. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

Over 200 armed Immigration and Customs Enforcement ("ICE") agents raided the Swift Packing Plant in Grand Island, Nebraska. They detained Ochoa-Gonzalez along with about 300 other employees. The agents examined her Mexican passport, which displayed her real name of "Silvia Ochoa-Gonzalez." They were suspicious because some of the stamps appeared to be missing letters, and the "ADIT" stamp — virtually always for one year — was for one year and one day. Questioned about the stamp, Ochoa-Gonzalez first insisted that it was genuine, issued by immigration officials. The interviewing agent told her to "tell me the truth" and eventually she admitted that the stamp was fake.

She was then transferred to Agent Carmen Morales for further processing as an illegal alien. Agent Morales first asked, "What is your full and complete name?" Ochoa-Gonzalez replied (in Spanish) that "what [the ICE agents] were doing wasn't right, that [Ochoa-Gonzalez] knew the stamp was false, but that if [Agent Morales] had children, [she] would know that you would do anything in order to keep your family and to provide for them." Morales then interrupted Ochoa-Gonzalez and told her to cooperate with the process, which she did, crying.

Ochoa-Gonzalez was moved to Iowa where she was interviewed the next day by another ICE agent. Ochoa-Gonzalez then made several incriminating statements. Later in the day, she was given her *Miranda* rights and refused to speak further without counsel.

Ochoa-Gonzalez was charged with one count of aggravated identity theft, 18 U.S.C. § 1028(a)(1), and four counts of possession of a forged passport. She moved to suppress her statements, invoking *Miranda v. Arizona*, 384 U.S. 436, 478-79

(1966). The district court held that Ochoa-Gonzalez was in custody beginning when the first ICE agent told her to "tell the truth," and that her statements to the first ICE agent and the statements the next day in Iowa should be suppressed. However, the district court held that the statements by Ochoa-Gonzalez to Agent Morales, despite the custodial circumstances, were in response to routine booking questions, and should not be suppressed.

Ochoa-Gonzalez then entered into a conditional plea agreement, pleading guilty to one count of aggravated identity theft, but preserving her right to appeal the suppression issue. In exchange, the government agreed to dismiss the other four counts in the indictment. Ochoa-Gonzalez, in her petition to plead guilty and at the plea hearing, stated that she knew that the ADIT number on her passport belonged to a real person, but did not learn this until "the discovery process." She did not contend at the plea hearing that such knowledge was an element of aggravated identity theft, nor did she preserve the right to appeal that issue. On January 21, 2009, she was sentenced to 24 months.

## II.

Ochoa-Gonzalez argues that her guilty plea should be set aside in light of the Supreme Court's decision in *Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009). In *Flores-Figueroa*, the Court held that in order to be convicted of aggravated identity theft under 18 U.S.C. § 1028A(a)(1), the defendant must know that the identity stolen belongs to a real person. *Id*. at 1894. Ochoa-Gonzalez objects that her guilty plea was based on a misunderstanding of this material element.

Because she did not make this argument in the district court, this Court reviews only for plain error. *See United States v. Beck*, 250 F.3d 1163, 1166 (8th Cir. 2001). A defendant who does not object to a Rule 11 error "has the burden to satisfy the plain error rule" of Rule 52(b). *United States v. Vonn*, 535 U.S. 55, 59 (2002). "The plain error principle applies even when, as here, the error results from a change in the law

that occurred while the case was pending on appeal." ***United States v. Pirani***, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). "[B]efore we can correct an error not raised at trial, 'there must be (1) error, (2) that is plain, and (3) that affects substantial rights.' If all three conditions are met, we may remedy the error only if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " ***United States v. Lovelace***, 565 F.3d 1080, 1087 (8th Cir. 2009) *citing* ***Johnson v. United States***, 520 U.S. 461, 466-67 (1997) (internal citations and quotation marks omitted).

A guilty plea is constitutionally valid only to the extent that it is voluntary and intelligent. ***Bousley v. United States***, 523 U.S. 614, 618 (1998). A plea is not intelligent "unless a criminal defendant first receives real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." ***Id***. (internal quotation marks omitted). To this end, Rule 11(b)(1)(G) of the Federal Rules of Criminal Procedure requires that a defendant be adequately informed of and understand "the nature of each charge to which the defendant is pleading."

In *Bousley*, the defendant argued, in part, that his guilty plea was involuntary because he was misinformed about the elements of an offense (the Supreme Court having clarified the elements of the offense after his conviction). ***Id***. at 616-18, *citing* ***Bailey v. United States***, 516 U.S. 137, 144 (1995). The Court stated: "Petitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged. Were this contention proved, petitioner's plea would be . . . constitutionally invalid." ***Id***. at 618-19. The Court further noted that "This type of claim can be fully and completely addressed on direct review based on the record created at the plea colloquy." ***Id***. at 622.

The relevant portion of Ochoa-Gonzalez's plea colloquy is:

THE COURT: And then do you further agree that on August 24th, 2005, in Nebraska, the document that you had, that the actual number actually belonged to somebody else?

THE DEFENDANT: Could you please repeat the question?

THE COURT: I didn't ask it very well. Do you agree that the number that was on your passport, the ADIT number, actually was someone else's number?

THE DEFENDANT: No, I didn't know.

THE COURT: But in any event, you knew it was not yours. Is that right?

THE DEFENDANT: Yes.

MR. VANDERSLICE [attorney for defendant]: And Judge, if you might notice on the petition, we wrote that Ms. Ochoa-Gonzalez now knows that that number is to a real person. She didn't – at the time she didn't know whose number it was, whether it went to a real person or not, but through the discovery process, we've learned that that – that number actually belonged to a real person, which I think is a material element for aggravated identity theft.

THE COURT: What would the evidence be in that respect?

MR. RUSSELL [Assistant U.S. Attorney]: That the ADIT number was a number of a – of a true individual. For purposes of this hearing, that individual's initials are O.V.G. That – that alien number was assigned to O.V.G. by ICE prior to August 24th of 2005. That would be what the evidence would show.

THE COURT: Do you agree that it's an element of the offense that she knew that it was assigned to a real person?

MR. RUSSELL: No, she does not have to know it was assigned to a real person. I believe Eighth Circuit case law indicates that she needs to know the number was not hers and that it was assigned to a real person at some point. But I don't believe she needs to know that.

MR. VANDERSLICE: And I think actually, Judge, there was just a decision on that, I think with –

. . . .

THE COURT: All right. Now, you were saying that there is just a recent Eighth Circuit case establishing that?

MR. VANDERSLICE: There is, Judge, and we would agree with what Mr. Russell said. This number went to a real person.

THE COURT: And she has acknowledged as much.

MR. VANDERSLICE: Yes.

THE COURT: I think I've hit them. Ms. Ochoa, do you have any questions or any matters that you want to address before we go any further?

THE DEFENDANT: No.

THE COURT: Do you still want to plead guilty on this conditional basis?

THE DEFENDANT: Yes.

Based on the record created at Ochoa-Gonzalez's plea colloquy, neither Ochoa-Gonzalez, nor her counsel, nor the court understood that her knowledge that the ADIT number belonged to another person was an essential element of aggravated identity theft under 18 U.S.C. § 1028A(a)(1). Ochoa-Gonzalez's plea was thus not intelligent, and is therefore constitutionally invalid. It was plain error for the district court to accept Ochoa-Gonzalez's plea. This error affected her substantial rights, as well as the fairness and integrity of the judicial proceedings. In light of *Flores-Figueroa*, Ochoa-Gonzalez's plea was not intelligent. Her conviction is reversed, and the case remanded.

III.

As to the suppression issue, this court reviews a district court's findings of fact for clear error, and its legal conclusions de novo. ***United States v. Rodriguez-Arreola***,

270 F.3d 611, 615 (8th Cir. 2001).  Because this issue is likely to arise on remand, this court addresses it here.

*Miranda* warnings must be given before a suspect's statements made during custodial interrogation may be admitted into evidence.  ***Miranda,*** 384 U.S. at 478-79. Here, the district court held that the statements Ochoa-Gonzalez made to Agent Morales were made while she was in custody.  Therefore, these statements must be suppressed if made in response to interrogation.

Ochoa-Gonzalez argues that because of the facts that (1) she admitted to the first ICE agent that her ADIT stamp was false, and (2) another ICE agent told Agent Morales in English and within earshot of Ochoa-Gonzalez that she had a "false ADIT stamp," Ochoa-Gonzalez reasonably believed that her conversation with Agent Morales was part of the same interrogation, and thus that her statements were a product of a single custodial interrogation.

Interrogation includes not only express questioning by an officer, but also any words or actions that "police should know are reasonably likely to elicit an incriminating response from the suspect." ***Holman v. Kemna***, 212 F.3d 413, 417 (8th Cir. 2000) *citing* ***Rhode Island v. Innis***, 446 U.S. 291, 301 (1980).  In particular, asking a routine booking question is not interrogation under *Miranda*. *See*, *e.g.*, ***Pennsylvania v. Muniz*** 496 U.S. 582, 601 (1990) (plurality opinion); ***United States v. Brown***, 101 F.3d 1272, 1274 (8th Cir. 1996); ***United States v. Horton***, 873 F.2d 180, 181 n. 2 (8th Cir.1989); ***United States v. McLaughlin***, 777 F.2d 388, 391-92 (8th Cir.1985).

> A request for routine information necessary for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating. Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the question be subject to scrutiny.

***Brown***, 101 F.3d at 1274 (quoting ***McLaughlin***, 777 F.2d at 391-92).

In this case, Agent Morales asked Ochoa-Gonzalez, "What is your full and complete name?" This question was a "request for routine information necessary for basic identification purposes." Because Ochoa-Gonzalez's name was never in doubt, her name was not directly relevant to the substantive offense in this case. Therefore, Agent Morales's question was not interrogation under *Miranda*.

A related theme of Ochoa-Gonzalez's argument is that her statements to Agent Morales were involuntary. In *United States v. McGlothen*, 556 F.3d 698, 700-01 (8th Cir. 2009), the defendant made a spontaneous, incriminating statement in response to a routine booking question after being arrested but before receiving *Miranda* warnings. This court held that the defendant's statement was voluntary, not in response to interrogation, and thus admissible. *Id.* at 701-02. The district court here found that "there is no reason to think that these statements were involuntary," a finding that is not clearly erroneous. Ochoa-Gonzalez's spontaneous statements to agent Morales were voluntary and not in response to interrogation, and should not be suppressed.

IV.

The judgment of the district court is reversed, and the case remanded for proceedings consistent with this opinion.

_____