# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3568
_____

United States of America

*Plaintiff - Appellee*

v.

Jeremias Sanchez-Velasco

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: December 13, 2019
Filed: April 17, 2020

_____

Before LOKEN, GRASZ, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

Jeremias Sanchez-Velasco visited the Linn County, Iowa Treasurer's Office the morning of April 27, 2018 to obtain registration and license plates for a newly acquired automobile. He submitted a Guatemalan consular card and proof of car insurance (form "SR-22") bearing the name "Miguel M. Sanchez" to clerk Brynn Love. The name on the SR-22 did not match the name of the secondary owner listed on the Iowa Department of Transportation's ("IDOT") database. Love called IDOT

Investigator Jason Nusbaum. After investigating, Nusbaum told Love he had notified immigration authorities the social security number on file for Sanchez-Velasco did not match his name. Immigration and Customs Enforcement ("ICE") Deportation Officers Billy Walker and Bryce Callison came to the Treasurer's Office, interviewed Sanchez-Velasco, and arrested him when he admitted to being unlawfully present in the United States. The officers drove Sanchez-Velasco to an ICE facility, where Officer Callison asked Sanchez-Velasco immigration-related questions to prepare a file that would be sent to the Immigration Court for removal proceedings.

A grand jury indicted Sanchez-Velasco for two offenses he committed in 2014, which came to light after his arrest for the immigration violation: unlawfully using a social security card to complete a Form I-9 in violation of 18 U.S.C. § 1546(a), and misusing a social security number in completing state and federal tax forms in violation of 42 U.S.C. § 408(a)(7)(B). After the district court[1] denied his motion to suppress statements made during the ICE officer interviews, Sanchez-Velasco conditionally pleaded guilty to misusing a social security number. The district court dismissed the Form I-9 charge and sentenced him to the 195 days he had served in prison and three years of supervised release. Sanchez-Velasco appeals, arguing his statements to Walker and Callison should have been suppressed because he was responding to custodial interrogation without receiving constitutionally mandated Miranda warnings. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). Reviewing the legal issues of custody and interrogation *de novo* and the underlying factual findings for clear error, we affirm. United States v. LeBrun, 363 F.3d 715, 719 (8th Cir. 2004) (en banc) (custody), cert. denied, 543 U.S. 1145 (2005); United States v. Ochoa-Gonzalez, 598 F.3d 1033, 1038 (8th Cir. 2010) (interrogation).

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, adopting the report and recommendations of the Honorable C.J. Williams, then Chief Magistrate Judge, now United States District Judge for the Northern District of Iowa.

## I. Background

When Sanchez-Velasco submitted his form SR-22, clerk Love could not find "Miguel M. Sanchez" in the IDOT database. She told Sanchez-Velasco he could leave and have the insurance company fix his SR-22, or he could provide his social security number. Sanchez-Velasco said he had not memorized his number. Love again searched the IDOT database, using the vehicle's identification number ("VIN"). This disclosed an application for title listing a name similar to Sanchez-Velasco's and a social security number. Sanchez-Velasco said the name on the title application was his "full name." Love called Nusbaum to learn if the application for title would suffice to complete the vehicle registration. Sanchez-Velasco said he would leave and have his SR-22 fixed. Love asked him not to leave because Nusbaum would provide an answer in a few minutes.

Nusbaum discovered that the social security number on the application for title did not belong to Sanchez-Velasco. He called Love and asked her to "stall" Sanchez-Velasco until law enforcement arrived. Love told Sanchez-Velasco that Nusbaum was still reviewing his documents. Nusbaum called Officers Walker and Callison and told them that someone with a Guatemalan ID was trying to acquire license plates at the Linn County Treasurer's Office with a social security number that did not belong to him. The deportation officers arrived a few minutes later, wearing plain clothes and concealing weapons and badges.

Officer Walker asked if there was a quiet place to talk to Sanchez-Velasco. Love's supervisor directed them to a nearby conference room. Walker asked Sanchez-Velasco, "Please will you come with me? I have some questions for you." Sanchez-Velasco walked into the conference room; Callison closed the door. Neither Walker nor Callison identified himself as an ICE officer, nor did they tell Sanchez-Velasco he was free to leave. Walker testified he "considered him to be detained" for questioning, not arrested. Callison testified Nusbaum's tip "gave us reasonable

suspicion to speak to the gentleman" about whether he was lawfully present in the United States. Walker asked Sanchez-Velasco in Spanish whether the Guatemalan consular card belonged to him and whether it contained his information. Sanchez-Velasco answered yes. Walker asked if he was unlawfully present in the United States. When Sanchez-Velasco answered yes, he was arrested for violating the Immigration and Nationality Act.

At the ICE office, after Sanchez-Velasco was photographed and fingerprinted, Officer Callison asked immigration-related biographical questions -- his name, country of birth, city of birth, date of birth, current address, parents' names, parents' country of citizenship, other family members, whether he was scared to return to his home country, why he came to the United States, and whether he had any pending claims for immigration relief. Callison did not ask Sanchez-Velasco how he used or acquired his social security number. Indeed, Nusbaum only told Callison about the false social security number on the application for title after Callison had finished questioning Sanchez-Velasco.

## II. Discussion

Miranda requires law enforcement officials to advise a person in "custody," prior to "interrogation," of his right to be free from compulsory self-incrimination and to the assistance of counsel. An individual is "in custody" when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quotation omitted); see LeBrun, 363 F.3d at 720. This is an objective determination considered from the perspective of a reasonable person in the suspect's position. Stansbury v. California, 511 U.S. 318, 322-23 (1994). In conducting the custody inquiry, "we consider the totality of the circumstances that confronted the defendant at the time of questioning." United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004), cert. denied, 544 U.S. 1060 (2005). We typically focus the analysis on six non-exclusive factors

enumerated in <u>United States v. Griffin</u>, 922 F.2d 1343, 1349 (8th Cir. 1990), as the district court did in this case. However, "it is important to recall that . . . 'custody' cannot be resolved merely by counting up the number of factors on each side of the balance." <u>Czichray</u>, 378 F.3d at 827.

**A. Questioning at the Treasurer's Office.** Sanchez-Velasco contends he was in custody when he was questioned by Officer Walker in the Treasurer's Office conference room. The district court, focusing its analysis on the non-exclusive <u>Griffin</u> factors, concluded that the following facts demonstrated that Sanchez-Velasco was not in custody when asked two questions in the conference room: neither Walker nor Callison restrained or touched Sanchez-Velasco; he voluntarily followed the officers into the conference room and answered Walker's questions; the officers concealed their guns and ICE insignia; Officer Walker pursued a narrow line of inquiry in a short period of time, using a normal tone of voice without deception or intimidation.

The second <u>Griffin</u> factor is whether a suspect possessed unrestrained freedom of movement inconsistent with his being in custody. In opposing Sanchez-Velasco's motion to suppress, the government argued that the deportation officers had reasonable suspicion to briefly detain Sanchez-Velasco and question him regarding his right to be in the United States under 8 U.S.C. § 1357(a)(1) and 8 C.F.R. § 287.8(b)(2). In recommending that the motion to suppress be denied, the magistrate judge recognized that immigration officers have this authority and concluded, in any event, the second factor weighed against a finding that Sanchez-Velasco was in custody because no evidence was offered that Sanchez-Velasco understood he was under arrest when questioned in the conference room. The district court agreed, noting that at no time did Officer Walker tell Sanchez-Velasco he was not free to leave. In these circumstances, the district court concluded, a reasonable person in Sanchez-Velasco's position would not feel as if he were under arrest. We agree with this assessment.

On appeal, Sanchez-Velasco argues the conference room interview was custodial because the officers not only failed to tell him he was free to leave, but also because, subjectively, they believed he was not free to leave. As the district court properly recognized, the custody issue turns on an objective determination of whether a reasonable person would have considered himself under arrest, not on the officer's subjective belief not communicated to the suspect. Of course, an officer's belief that a suspect is not free to leave may be communicated by actions as well as words. But that possibility is speculation here, and it would provide Sanchez-Velasco no help even if objectively supported.

Immigration officers are authorized by statute "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1). The Attorney General's regulations authorize an immigration officer to "briefly detain [a] person for questioning" if the "immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned . . . is an alien illegally in the United States." 8 C.F.R. § 287.8(b)(2). The officer can arrest a suspect without a warrant if the officer has "reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); see 8 C.F.R. § 287.8(c)(2)(i-ii). "Reason to believe" means probable cause that the Fourth Amendment requires for a valid arrest. United States v. Diaz-Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010).

The Treasurer's Office interview by Officers Walker and Callison was consistent with this authority. The information IDOT Investigator Nusbaum provided the officers -- someone with a Guatemalan identification card was using a social security card that did not belong to him to register a motor vehicle -- provided reasonable suspicion to detain that person to question whether he was lawfully in the United States. See 8 U.S.C. § 1357(a)(1); 8 C.F.R. § 287.8(b)(2). Thus, Officer Walker's testimony that he considered Sanchez-Velasco "to be detained" for

questioning was correct. This type of brief detention is not "subject to the dictates of Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984); see United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975); Ojeda-Vinales v. INS, 523 F.2d 286, 288 (2d Cir. 1975). When Sanchez-Velasco admitted he was in the country illegally, the officers had probable cause to arrest under 8 U.S.C. § 1357(a)(2). See United States v. Torres-Lona, 491 F.3d 750, 756 (8th Cir. 2007), cert. denied, 552 U.S. 1121 (2008). Walker did not take Sanchez-Velasco into custody for Miranda purposes until Sanchez-Velasco's admission provided probable cause -- "reason to believe" in the language of the statute -- to arrest him for being unlawfully present.

Officer Walker's two questions in the Treasurer's Office conference room were authorized by 8 U.S.C. § 1357(a)(1) and 8 C.F.R. § 287.8(b)(2) and entirely consistent with the non-custodial questioning that is authorized during a brief detention to confirm or dispel Walker's reasonable suspicion that Sanchez-Velasco was not lawfully present in the United States and was therefore subject to removal proceedings before an Immigration Court. Sanchez-Velasco, who had come to the Treasurer's Office to register a motor vehicle and remained while his documentary deficiencies were investigated, entered the conference room and answered Walker's questions voluntarily, without a reasonable basis to believe he was under formal arrest. See United States v. Flores-Sandoval, 474 F.3d 1142, 1147 (8th Cir. 2007). While an interview that ends in arrest may indicate a custodial setting, that is not dispositive, especially when the interview arises from reasonable suspicion and the suspect's answers provide probable cause for the arrest. See United States v. Hernandez-Hernandez, 327 F.3d 703, 706 (8th Cir. 2003). The district court properly denied Sanchez-Velasco's motion to suppress his responses to Officer Walker's two questions at the Treasurer's Office.

**B. Questioning at the ICE Facility.** Sanchez-Velasco was in custody at the ICE facility. The issue is whether Officer Callison's routine biographical questions constituted interrogation for Miranda purposes, that is, questioning or conduct that

a government officer should know is reasonably likely to elicit an incriminating response. See United States v. McLaughlin, 777 F.2d 388, 391 (8th Cir. 1985). It is "well-settled" that a "request for routine information necessary for basic identification purposes is not interrogation under Miranda, even if the information turns out to be incriminating." United States v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996) (quotation omitted); see Pennsylvania v. Muniz, 496 U.S. 582, 600-02 (1990) (plurality). Miranda warnings must precede routine "booking questions" only if the questioner "should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged." Ochoa-Gonzalez, 598 F.3d at 1038, quoting Brown, 101 F.3d at 1274. The district court concluded that Officer Callison's questions were not custodial interrogation because Callison could not have known his questions were likely to elicit incriminating information regarding the two criminal charges that were eventually brought against Sanchez-Velasco. We agree.

In reviewing this issue, a factor of great significance is that the Attorney General's regulations carefully distinguish between the warrantless arrest of an alien for a *criminal* violation of the immigration laws, and what is called the "administrative arrest" of an alien who is reasonably believed to be illegally present in the United States. See 8 C.F.R. § 287.3; Diaz-Quintana, 623 F.3d at 1239-41. An administrative arrest is intended to detain the suspect for civil removal proceedings before an immigration judge. That was the procedure Officers Walker and Callison followed in this case. Consistent with that procedure, Callison testified that his immigration-related questions were for the purpose of preparing a file to be sent to an immigration judge. Thus, not only had the facts underlying the criminal charges relating to Sanchez-Velasco's acquisition and use of a false social security number years earlier not been discovered when Callison questioned him, Sanchez-Velasco was not being held for *any* criminal offense. Even when the alien is also suspected of having committed the felony of illegal reentry after removal, see 8 U.S.C. § 1326, routine booking questions are not custodial interrogation for Miranda purposes. See

United States v. Garcia-Zavala, 919 F.3d 108, 113 (1st Cir.), cert. denied, 140 S. Ct. 391 (2019).

Sanchez-Velasco argues that Officer Callison's questioning was custodial interrogation because he was "reasonably aware" that his immigration-related biographical questions could elicit responses "directly relevant to the substantive offense charged," either the crime of illegal reentry after removal, or the social security offenses he was ultimately charged with committing. Ochoa-Gonzalez, 598 F.3d at 1038 (quotation omitted). We acknowledge there can be cases where Miranda warnings may be required before an alien administratively arrested for being illegally present is asked routine biographical questions, for example, when the officer is aware of a prior removal and should know his questions will likely elicit incriminating reentry responses. See United States v. Arellano-Banuelos, 912 F.3d 862, 867 (5th Cir.), cert. denied, 140 S. Ct. 529 (2019). The question is fact-intensive.

Here, Officer Callison testified, without contradiction, that all the questions he asked after Sanchez-Velasco arrived at the ICE facility related to his immigration status and were relevant to the contemplated civil removal proceedings. No question related to Sanchez-Velasco's social security number, how he obtained and used it, or to his employment. The questions were not directly relevant to substantive offenses that had not been uncovered, much less charged. Indeed, Officer Callison was not yet aware of the potential social security offenses. Since Callison lacked knowledge of the potential criminal offenses, the record will not permit a finding he was reasonably aware that his standard processing questions would elicit incriminating responses.

Sanchez-Velasco argues that information about his immigration status and citizenship made it easier to convict him of these offenses, but he does not explain why. The charges alleged that Sanchez-Velasco made affirmative misrepresentations on tax and employment forms, documents not yet discovered. Callison's questions

related directly to removal proceedings; they had at most an indirect relation to the crimes eventually charged. As Officer Callison was not reasonably aware that his questions could elicit incriminating information "directly relevant to the substantive offense[s]" not yet charged, we agree with the district court that his questioning was a "request for routine information necessary for basic identification purposes [that] is not interrogation under <u>Miranda</u>, even if the information turns out to be incriminating." <u>Brown</u>, 101 F.3d at 1274 (quotation omitted).

The judgment of the district court is affirmed.

_____