# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2477
_____

United States of America

*Plaintiff - Appellee*

v.

Donell Jamar Hines, also known as Donnell Jamar Hines

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: September 23, 2022
Filed: March 10, 2023
_____

Before SMITH, Chief Judge, KELLY and GRASZ, Circuit Judges.
_____

SMITH, Chief Judge.

Donell Jamar Hines appeals the district court's[1] denial of his motion to suppress and his request for a *Franks*[2] hearing. We affirm.

_____

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

[2]*Franks v. Delaware*, 438 U.S. 154 (1978).

## I. *Background*

On September 12, 2019, Officer Brian Schertz with the Davenport Police Department in Davenport, Iowa, conducted a dog sniff with his canine, Kurly, at 314 Betsy Ross Place in the Betsy Ross apartment complex. Located at that address is a three-story building with two units on each floor. Kurly positively alerted on Hines's door, Apartment #2, located on the first floor. Officer Bryant Wayland obtained a search warrant based on, among other things, the dog sniff of the apartment door.

Before officers could execute that warrant, Hines moved to a different unit in a different building within the Betsy Ross apartment complex—321 Betsy Ross Place. Located at that address is a two-story building with four units. Hines lived in Apartment #1 on the first floor. The exterior door to Hines's new building was locked and not accessible to the general public. However, entrances to the individual units within the building are accessible through a common hallway. With management's permission, Officer Wayland requested another dog sniff at Hines's new unit.

On September 21, 2019, Officer Brandon Koepke conducted the second dog sniff with his canine, Dawn, at 321 Besty Ross Place. Dawn positively alerted to Hines's door. Officers then obtained a search warrant based on the dog sniff and other information. The affidavit submitted in support of the search warrant provided, in relevant part:

> 3. Officers had received several complaints from concerned citizens/management about possible drug activity at an apartment complex, 314 Betsy Ross Pl. The complaints included people loitering around the building, vehicle traffic and an alleged armed robbery of the occupants of Apt 2. During the alleged robbery an anonymous source informed the apartment management that two males were observed robbing someone while possessing firearms in the rear parking lot. The person who was robbed was then observed exiting Apt 2 also carrying a firearm and running after the two suspects—there were no police calls for service for this incident at the apartment complex. Apartment

-2-

management directed officers to Apt 2 as being a possible suspect in a drug distribution based on the complaints they've received. On 09/12/19 a K9 sniff was conducted of the interior of 314 Betsy Ross Pl St due to the complaint with positive results—a search warrant was obtained for this apartment but was not executed. Donell Hines was the sole tenant of 314 Betsy Ross Pl Apt 2.

4. On 09/14/19 Donell Hines was re-located from 314 Betsy Ross Pl Apt 2 to 321 Betsy Ross Pl Apt 1 due to apartment maintenance issues.

5. On 09/21/19 a K9 sniff was conducted of the interior of 321 Betsy Ross Pl St due to the complaint. The K9 had a positive alert on Apartment 1 for the presence of narcotics. The K9 sniff was conducted with the approval of Summer Ridge Management. The K9 used is a certified and trained drug detection dog.

[6]. "Donnell J Hines, 03/27/89" is the sole tenant listed for 321 Betsy Ross Pl Apt 1 according to Summer Ridge Apartments management.

R. Doc. 32, at 4. The affidavit also included a list of Hines's arrest history and drug convictions.

On September 25, 2019, the police executed the search warrant on Hines's apartment at 321 Betsy Ross Place. Hines answered the door and immediately complied with the officers' commands. He was handcuffed and patted down for weapons. Officers inquired whether there were any kids or animals in the apartment and then asked a series of questions to confirm Hines's identity. After a few minutes, Officer Wayland asked Hines whether he "wanted to talk." R. Doc. 92, at 192. Hines agreed. Hines, Officer Wayland, and Detective Robert Myers went into the bathroom to speak privately. In the bathroom, Officer Wayland explained what drew their

attention to Hines's unit—the drug activity complaints and alleged armed robbery—and then read Hines his *Miranda*[3] rights.

Following the *Miranda* warnings, Hines answered questions from both officers. After about 20 minutes, Hines accompanied Officer Wayland to the police station to continue questioning. At the station, Detective Myers again reminded Hines of his *Miranda* rights and questioned him.

The search of Hines's apartment yielded cocaine, cocaine base, heroin, and over $2,000 in currency. Hines was charged with possession with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Hines moved to suppress all evidence obtained through the search, along with statements he made following his arrest. An evidentiary hearing was held on the motion. The district court received evidence and heard testimony from Officer Wayland, Officer Koepke, Officer Schertz, and a drug-detection dog expert.

Following the hearing, the district court denied the suppression motion. The district court concluded the dog sniffs violated Hines's Fourth Amendment rights because officers had deployed the drug-detecting dogs within the curtilage of Hines's apartments. Notwithstanding the illegal search, the district court concluded that the search warrant was valid under the *Leon*[4] good faith exception. The court also determined that Hines was not entitled to a *Franks* hearing and that his statements to officers were not in violation of *Miranda*.

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[4]*United States v. Leon*, 468 U.S. 897 (1984).

Thereafter, Hines conditionally pleaded guilty to possession with intent to distribute controlled substances pursuant to a plea agreement. The district court sentenced Hines to 57 months' imprisonment.

## II. *Discussion*

On appeal, Hines argues that the district court erroneously denied his motion to suppress evidence, his request for a *Franks* hearing, and his motion to suppress his statements.

### A. *Motion to Suppress Evidence*

Hines asserts that the district court correctly held that "law enforcement's two warrantless K9 sniffs of the curtilage of his home were violations of the Fourth Amendment." Appellant's Br. at 20. Specifically, he maintains that the two dog sniffs violated his Fourth Amendment rights under *Florida v. Jardines*, 569 U.S. 1 (2013), as a physical intrusion on the curtilage of his home. Alternatively, he argues that the dog sniffs violated his Fourth Amendment rights as a violation of his reasonable expectation of privacy in the area immediately outside his apartment door.

Hines argues that the district court erred, however, in ultimately denying his motion to suppress based on its application of the *Leon* good faith exception. The government responds that even assuming the evidence was obtained pursuant to the execution of an invalid search warrant, the *Leon* good faith exception applies because "[t]he officers relied in good faith on decisional law allowing dog sniffs in these circumstances." Appellee's Br. at 18.

We recently addressed a substantially similar issue involving the same police department's use of a drug dog sniff. *United States v. Perez*, 46 F.4th 691 (8th Cir. 2022). There, a Davenport police officer received information from a confidential source that the defendant, who had prior controlled substances convictions, possessed a firearm and was selling drugs while living in an apartment building. *Id.* at 696. The

officer requested a dog sniff of the apartment building but did not seek a warrant. Instead, the officer "rel[ied] . . . on an agreement between the Davenport Police Department and the apartment manager to allow police to enter the building to conduct dog sniffs in the hallways." *Id.* As in the present case, Officer Koepke[5] used his dog Dawn to execute the dog sniff. *Id.* Officer Koepke

> entered through an unlocked back door, and walked to the second floor. Dawn did not alert at any of the second-floor apartments. On the third floor, Dawn alerted to two apartments, [one of which was the apartment in which the defendant resided], about three to six inches from the bottom seams of the doors. Each apartment door [was] recessed from the main hallway in an alcove. Photos taken later show[ed] shoes and a doormat in the alcove area outside [the apartment where the defendant resided].

*Id.*

Following the positive dog sniff, police drafted an affidavit in support of a search warrant for the apartment. *Id.* A judge signed the warrant, and the police executed the search. *Id.* They discovered various controlled substances in the apartment. *Id.*

After the defendant was indicted, he filed a suppression motion, arguing that the dog sniff constituted an illegal search. *Id.* The district court denied the motion, and following a conditional guilty plea, the defendant appealed. *Id.* at 696–97.

On appeal, we held "that even if the evidence was obtained pursuant to execution of an invalid search warrant, the district court properly denied [the

---

[5]Our prior opinion refers to Officer Koepke as "Officer Kopeke." *Id.*

defendant's] motion to suppress under the *Leon* good faith exception." *Id.* at 697. We explained, in relevant part:

> Before the Supreme Court decided in *Jardines* that a drug dog sniff on the front porch of a house is an unlawful intrusion on the curtilage of a home, *see* 569 U.S. at 6–7, 133 S. Ct. 1409, this court rejected a Fourth Amendment challenge to a drug dog sniff outside an interior apartment door in *United States v. Scott*, 610 F.3d 1009, 1016 (8th Cir. 2010). At the time Officer Farley requested, and Officer Kopeke performed, the dog sniff outside Apartment 10, we had neither expressly overruled *Scott* nor explained how *Jardines* applies to apartment doors in a common hallway. *See United States v. Hopkins*, 824 F.3d 726, 732 & n.3 (8th Cir. 2016) ("In this case we need not consider how Jardines applies to interior hallways of an apartment complex."). Based on the state of our caselaw at the time of the search, we find that the good faith exception applies. It was reasonable for the officers to rely on our then-applicable precedent that dog sniffs at an interior apartment door are permissible. *See Davis v. United States*, 564 U.S. 229, 241, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011) ("Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.").

*Id.* at 697–98.

*Perez* controls the present case. The two dog sniffs occurred in September 2019; at that time, we "had neither expressly overruled *Scott* nor explained how *Jardines* applies to apartment doors in a common hallway." *Id.* The applicable standard is an objective—not subjective—one. *See United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013) (stating that "the detectives' prewarrant conduct must have been 'close enough to the line of validity to make the *officers' belief* in the validity of the warrant *objectively reasonable*'" (emphases added) (quoting *United States v.*

*Conner*, 127 F.3d 663, 667 (8th Cir. 1997))).[6] Applying this standard, the district court correctly denied Hines's suppression motion.

## B. *Franks Hearing*

Hines argues that the search warrant application misstated and omitted information critical to a judicial finding of probable cause and that he should have been granted a *Franks* hearing. Specifically, he argues that the search warrant application "failed to include [(1)] the proximity of the search to [his] home's threshold, [(2)] the nature and character of the apartment building, [(3)] the time of day of the search, [(4)] the alert locations, [(5)] the number of alerts, [(6)] and the actual touching of [his] home in conducting the search." Appellant's Br. at 38. He maintains that these facts were necessary to a probable cause finding and that if such facts had been available to a reviewing magistrate, then "the constitutional violations would have been apparent and no probable cause would have been found." *Id.*

> There is . . . a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported

[6]Because we apply an objective standard, we reject Hines's argument that "the circumstances in *Hopkins* are distinguishable" from the present case because "the officer [in *Hopkins*] testified he was aware of *Jardines* but did not believe it applied," while Officer "Koepke testified law enforcement had not been trained on *Jardines* and, in fact, there is no formalized training, at all, concerning dog searches or applicable Circuit precedent." Appellant's Br. at 32.

Furthermore, we find it immaterial that the exterior door to Hines's new building was locked and not accessible to the general public, while the police in *Perez* entered through "an unlocked back door." *Perez*, 46 F.4th at 696. There is no dispute that apartment management gave permission for the officers to enter the locked building. Nor is there any dispute that the entrances to the individual units within the building are accessible through a common hallway.

by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Franks*, 438 U.S. at 171–72.

"The requirement of a substantial preliminary showing is not lightly met, and we review the denial of a *Franks* hearing for abuse of discretion." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (cleaned up). "Where the defendant's claim is that the affiant intentionally or recklessly omitted material information from the affidavit, 'reckless disregard for the truth may be inferred . . . only when the material omitted would have been clearly critical to the finding of probable cause.'" *United States v. Randle*, 39 F.4th 533, 537–38 (8th Cir. 2022) (alteration in original) (quoting *United States v. Carnahan*, 684 F.3d 732, 735 (8th Cir. 2012)).

We agree with the government that Hines's challenges to the search warrant affidavit's omission of certain details about the two dog sniffs amount to "an attempt to relitigate the merits of the curtilage issue." Appellee's Br. at 21. As previously explained, at the time that law enforcement conducted the dog sniffs in September 2019, "circuit precedent established that a 'sniff of the apartment door frame from a

common hallway [does] not constitute a search subject to the Fourth Amendment.'" *United States v. Mathews*, 784 F.3d 1232, 1235 (8th Cir. 2015) (alteration in original) (quoting *Scott*, 610 F.3d at 1016). Under this precedent, "positive alerts from those sniffs alone provided probable cause to issue the search warrant for [Hines's] apartment." *Id.*

## C. *Statements*

Finally, Hines argues that his initial statements to police were made without *Miranda* warnings and that his subsequent waiver of *Miranda* was involuntary. Specifically, he argues that the police asked him details about his residence and employment status without advising him of his rights while he was in custody. He next asserts that he did not knowingly and voluntarily waive his rights after receiving his *Miranda* warnings because of the unlawful questioning.

"Under *Miranda*, a defendant's statements are inadmissible if they were the product of 'custodial interrogation' and he was not properly advised of his right to be free from compulsory self-incrimination and to the assistance of counsel."*United States v. Tapia-Rodriguez*, 968 F.3d 891, 894 (8th Cir. 2020) (quoting *Miranda*, 384 U.S. at 444). "Interrogation" is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id.* (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). "The 'should have known' standard is objective and 'focuses primarily upon the perceptions of the suspect, rather than the intent of the police.'" *Id*. (quoting *Innis*, 446 U.S. at 301). Not every government inquiry "to a suspect in custody constitute[s] interrogation and therefore need be preceded by *Miranda* warnings." *Id*. (quoting *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985)).

We have previously recognized that "'[a] request for routine information necessary for basic identification purposes is not interrogation' unless 'the

government agent should reasonably be aware that the information sought . . . is directly relevant to the substantive offense charged.'" *Id.* (second alteration in original) (quoting *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1038 (8th Cir. 2010)). In *Ochoa-Gonzalez* and *Tapia-Rodriguez*, we held that "asking [the defendant] for his name was a routine identification request because his name 'was not directly relevant to the substantive offense' the officers were investigating." *Id.* (citing *Ochoa-Gonzalez*, 598 F.3d at 1039). Furthermore, we held in *Tapia-Rodriguez* that "asking [the defendant] whether he lived in the apartment was 'a request for routine information necessary for basic identification purposes' because the officers were 'trying to understand and identify [his] presence' in an apartment they were about to search with [another individual's] consent." *Id.* (second alteration in original)(quoting *United States v. Cowan*, 674 F.3d 947, 958 (8th Cir. 2012)). "[A] routine identification inquiry 'is not interrogation under *Miranda*, even if the information turns out to be incriminating.'" *Id.* at 895 (quoting *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996)).

Here, the record shows that after Hines answered the door, he was immediately placed in handcuffs prior to the commencement of the search. As he sat at the kitchen table, police asked him questions to confirm his identity, ensure there was no one else present in the apartment, and determine whether anyone else would be arriving during the search. Officers inquired whether there were any kids or animals in the apartment and then asked a series of questions, such as his name, whether he lived in the unit, his phone number, employment status, and whether he was on probation or parole. Hines was then taken to the bathroom to speak with Officer Wayland and Detective Myers, where he was read his *Miranda* rights by Officer Wayland prior to further questioning.

The district court did not err in denying Hines's motion to suppress statements given while he was in custody. As the district court correctly explained, "Police asked [Hines] a series of simple questions to confirm his identity and ensure officer safety.

They were not seeking to elicit incriminating responses from [Hines]. He was read his *Miranda* rights prior to his further questioning in the bathroom and upon the continued questioning at the police station." R. Doc. 55, at 12. Because Hines was not unlawfully questioned, his contention that he could not have knowingly and voluntarily waive his rights because of the allegedly unlawful questioning necessarily fails.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

KELLY, Circuit Judge, concurring.

I agree that the motion to suppress was properly denied under the good faith exception, but for the reasons stated in my concurrence in <u>United States v. Perez</u>, 46 F.4th 691, 704–07 (8th Cir. 2022), I would conclude that the drug dog sniffs of Hines's apartment were a violation of his Fourth Amendment rights. I otherwise concur in the court's opinion.

GRASZ, Circuit Judge, concurring.

I write separately to highlight the fact that, in my view, the district court's determination that the warrantless K9 sniff of the curtilage of Hines's residence was an illegal search is not squarely before the court in this appeal. By affirming the district court's ultimate denial of the motion to suppress under the *Leon* good faith exception, this court in no way suggests the district court's determination regarding the unconstitutionality of the search was incorrect. Thus, I join the opinion in full.

_____