# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1157

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Alfred Eugene Finch, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 19, 2010
Filed: January 6, 2011

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Alfred Finch was convicted of one count of possession with intent to distribute 5 grams or more of cocaine base ("crack cocaine"), a violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). The district court[1] sentenced him to 78 months' imprisonment followed by 5 years of supervised release. Finch appeals his conviction and sentence. We affirm.

_____

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

## I. BACKGROUND

On February 27, 2009, two officers of the Lexington, Nebraska Police Department responded to a report of a possible burglary at 611 East 6th Street. Vincent Steele informed the officers that he had arrived home to find a window open and a door slightly ajar, and he asked the officers to inspect the building for intruders. While checking the northwest bedroom, one of the officers noticed a mesh laundry container behind the closet door, on which lay a plastic bag. Inside the plastic bag were 105 smaller green plastic bags, each containing a white rock-like substance that the officer suspected to be illegal drugs. Tests later confirmed that the substance was crack cocaine. Also in the room, the officers observed a digital scale, .22 caliber bullets, and mail addressed to Alfred Finch. Steele denied owning the drugs, and he later testified that Finch lived in the northwest bedroom.[2]

Based on the drugs seized at 611 East 6th Street, a federal grand jury returned a one-count indictment charging Finch with possession of 5 grams or more of crack cocaine with intent to distribute. Finch entered a plea of not guilty and proceeded to trial. At the close of the Government's case-in-chief, Finch moved pursuant to Fed. R. Crim. P. 29(a) for a judgment of acquittal, which the district court denied. The jury returned a verdict of guilty, making a specific finding that Finch possessed at least 5 grams of crack cocaine. At sentencing, the district court adopted the jury's quantity finding and sentenced Finch to 78 months' imprisonment pursuant to 21 U.S.C. § 841(b)(1)(B)(iii) (prescribing a sentence of 5 to 20 years' imprisonment for violations of § 841(a) involving 5 or more grams of crack cocaine). On appeal, Finch (1) attacks the sufficiency of the evidence supporting the jury's verdict that he possessed crack cocaine with intent to distribute, (2) challenges the admissibility of certain expert testimony, and (3) contends that he is entitled to resentencing under a

---

[2] Steele slept in a bedroom across the hall from the bedroom in which the drugs were found.

retroactive application of the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010).

## II. DISCUSSION

Finch first challenges the sufficiency of the evidence underlying his conviction. "Where a party challenges the evidence underlying his conviction, the standard of review is very strict, and the jury's verdict is not to be lightly overturned." *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). "In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Bates*, 77 F.3d 1101, 1104-05 (8th Cir. 1996) (quoting *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir. 1992)). "We will reverse only if no reasonable jury could have found the accused guilty beyond a reasonable doubt." *United States v. Collins*, 340 F.3d 672, 678 (8th Cir. 2003).

"The offense of possession with intent to distribute consists of two elements: knowing possession of crack cocaine and the intent to distribute it." *United States v. McClellon*, 578 F.3d 846, 854 (8th Cir. 2009), *cert. denied*, 558 U.S. ---, 130 S. Ct. 1106 (2010). Possession can be actual or constructive, and "an individual has constructive possession of contraband if he has . . . dominion over the premises in which the contraband is concealed." *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002) (internal quotation marks omitted).

We find that there is sufficient evidence of Finch's dominion over the northwest bedroom to support the jury's conclusion that he knowingly possessed the crack cocaine. Steele testified that he rented the house at 611 East 6th Street, that he allowed Finch to move into the house in early February 2009, and that Finch slept in the northwest bedroom. *See United States v. Kent*, 531 F.3d 642, 652 (8th Cir. 2008)

(relying in part on testimony that defendant regularly slept in the room where drugs were found as probative of constructive possession). Although Finch attacks Steele's credibility, "[i]t is axiomatic that we do not pass upon the credibility of witnesses or the weight to be given their testimony" when reviewing a district court's denial of a motion for judgment of acquittal. *United States v. Clay*, 618 F.3d 946, 950 (8th Cir. 2010) (quoting *United States v. Slaughter*, 128 F.3d 623, 627 (8th Cir. 1997)). The record also is replete with additional evidence supporting the jury's finding that Finch had constructive possession of the contraband in the bedroom. Larry Hock, the owner of the house, testified that he encountered Finch there in mid-February 2009 and saw Finch go toward the area of the house where the bedrooms are located. Hock further testified that he entered the house in mid-March and observed envelopes addressed to Finch in the northwest bedroom. The police officers also observed mail addressed to Finch in the bedroom when they seized the crack cocaine. Moreover, another witness, Dennis Hines, testified that he purchased crack cocaine from Finch in the northwest bedroom. *See McClellon*, 578 F.3d at 855 (relying in part on testimony describing defendant's sale of controlled substances in a bedroom as evidence of constructive possession).

With respect to the intent to distribute element, "[c]ircumstantial evidence such as drug quantity, packaging material, and the presence of cash may be used to establish intent to distribute." *Id.* at 854 (alteration in the original) (quoting *United States v. Barrow*, 287 F.3d 733, 736-37 (8th Cir. 2002)). In the present case, an intent to distribute may easily be inferred from the evidence. The crack cocaine was packaged in 105 small plastic bags. *See United States v. Kuenstler*, 325 F.3d 1015, 1024 (8th Cir. 2003) (holding the presence of packaging materials probative of intent to distribute). Police also found bullets and a digital scale in the bedroom. *See United States v. Boyd*, 180 F.3d 967, 981 (8th Cir. 1999) (relying in part on the presence of a scale as probative of intent to distribute); *cf. United States v. Dawson*, 128 F.3d 675, 677 (8th Cir. 1997) ("This Court has set forth factors from which an intent to distribute a controlled substance may be inferred. Most significant is the presence of

a firearm."). Moreover, as noted above, Dennis Hines testified that Finch actually sold him crack cocaine in the same bedroom. *See McClellon*, 578 F.3d at 856 (relying in part on testimony of defendant's "past conduct in selling drugs" as probative of intent to distribute).

Finch next argues that the district court erred when it admitted expert testimony regarding the quantity of crack cocaine consumed during laboratory testing. The Government called Vickie Cowan, a forensic chemist for the Nebraska State Patrol Crime Lab, to testify about the identity and quantity of the substance in the 105 small plastic bags. Before testing the material, she initially weighed the contents of each plastic bag individually and added the 105 separate results together to calculate a total weight of 6.68 grams. Cowan then conducted a number of tests on samples taken from the contents of each of the 105 bags, which confirmed that the substance in each was crack cocaine. The tests destroyed the samples.

The scale used by Cowan had a 0.03-gram margin of error. One week prior to trial, the Government requested that Cowan reweigh the remaining material in order to foreclose any argument by the defense that the cumulative margin of error in the initial weighings supplied reasonable doubt as to whether the total quantity of crack cocaine was at least 5 grams.[3] This time, however, Cowan emptied the contents of the 105 bags and weighed the entire amount of remaining crack cocaine in a single weighing, which resulted in a weight of 4.28 grams. Factoring in the single iteration

---

[3] Each of the 105 initial measurements was subject to a 0.03-gram margin of error. Therefore, according to the parties, the substance theoretically could have weighed as little as 3.53 grams (if the scale read 0.03 grams high every time) or as much as 9.83 grams (if the scale read 0.03 grams low every time). Although we question the statistical likelihood that the original 6.68-gram weight could actually weigh less than 5 grams based solely on the scale's 0.03-gram margin of error, the parties did not explore this question, and we need not address it.

of the scale's margin of error, the substance's total weight theoretically could have ranged anywhere from 4.25 grams to 4.31 grams (4.28 plus or minus 0.03).

Because Cowan's final weighing resulted in a weight of less than 5 grams, the Government endeavored to elicit her opinion that the earlier testing conducted on samples from each of the 105 bags had consumed at least a total of 0.76 grams of crack cocaine. In this way, the Government hoped to solidify its case that Finch had possessed at least 5 grams (because 0.76 grams plus a theoretical minimum weight of 4.25 grams would yield an original amount of more than 5 grams).[4] Finch objected to the admission of Cowan's opinion, arguing that her estimate regarding the amount of crack cocaine consumed during testing was factually unsupported and thus inadmissible. After a hearing conducted outside the presence of the jury, the district court determined that Cowan's opinion was sufficiently reliable and admitted the evidence.

Finch contends that this expert opinion was fundamentally unsupported by any factual basis and should have been excluded under Fed. R. Evid. 702.[5] "We review

---

[4] We note that, because the sentencing range prescribed in 21 U.S.C. § 841(b)(1)(B)(iii) applies to offenses involving *at least* 5 grams of crack cocaine, the Government need only have elicited Cowan's testimony that she consumed 0.75 grams, not 0.76 grams.

[5] Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

the district court's decision to admit expert testimony for abuse of discretion, according it substantial deference." *United States v. Bailey*, 571 F.3d 791, 803 (8th Cir. 2009). As a general rule, "[t]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *United States v. Rodriguez*, 581 F.3d 775, 795 (8th Cir. 2009) (quoting *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997)), *cert. denied*, 562 U.S. ---, 79 U.S.L.W. 3244 (U.S. Oct. 18, 2010). "Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Id.* (quoting *Arkwright Mut. Ins. Co.*, 125 F.3d at 1183). "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000) (quoting *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998)).

Finch argues that Cowan's estimate that the testing process consumed at least 0.76 grams of crack cocaine was "mere conjecture." We disagree. Cowan initially testified that, in the course of her career, she had tested thousands of samples of substances, including several hundred samples of crack cocaine. Additionally, she later confirmed that her experience in analyzing and weighing small quantities of powdery substances gave her "a better judgment about the quantities involved . . . than a layperson." Cowan then testified that the contents of each of the 105 bags weighed between 0.04 grams and 0.11 grams. Based on her experience in weighing these small quantities of powdery substances and extracting portions of them for testing, Cowan explained that it was common to consume one quarter of "a small sample like the 0.04 [sample]." Because one quarter of 0.04 grams—the smallest sample—is 0.01 grams, Cowan could estimate that, at a bare minimum, she had consumed 1.05 grams of crack cocaine during testing (0.01 grams multiplied by 105 bags), well in excess of the 0.76-gram "threshold." We conclude that Cowan's expert testimony was not "fundamentally unsupported" and that its admission did not constitute an abuse of discretion.

Finally, Finch argues that he is entitled to resentencing under a retroactive application of the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010).  We reject this argument as foreclosed by our decision in *United States v. Brewer*, 624 F.3d 900 (8th Cir. 2010), which held that, because the Fair Sentencing Act was not made retroactive, "the 'general savings statute' . . . requires us to apply the penalties in place at the time the crime was committed."  *Id.* at 909 n.7.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____