# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3751
_____

United States of America

*Plaintiff - Appellee*

v.

Idelfonso Tapia-Rodriguez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: February 14, 2020
Filed: August 6, 2020

_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Idelfonso Tapia-Rodriguez pleaded guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846, reserving the right to appeal the denial of his motion to suppress. On appeal, Tapia-Rodriguez raises a single issue --

whether the district court[1] erred in denying his motion to suppress statements made when Omaha police officers, about to conduct a search to which his roommate had consented, asked Tapia-Rodriguez "if he lived in the house and which bedroom was his." Tapia-Rodriguez argues this was unconstitutional custodial interrogation because he had not been given the warnings mandated by Miranda v. Arizona, 384 U.S. 436, 444 (1966). Reviewing the legal issues of custody and interrogation *de novo* and the underlying factual findings for clear error, we affirm. United States v. Sanchez-Velasco, 956 F.3d 576, 579 (8th Cir. 2020) (standard of review).

## I. Background.

The only witness at the suppression hearing was Sergeant Brian Heath of the Omaha Police Department. Heath testified that, on September 26, 2017, he arrested Jose Rodolfo-Chaidez for methamphetamine trafficking. Interviewed in Spanish, Rodolfo-Chaidez waived his Miranda rights, told the officers where he lived, admitted the apartment contained narcotics, and signed a written consent to search. Rodolfo-Chaidez said he lived with a roommate named "Poncho" who was involved in narcotics. Rodolfo-Chaidez said he occupied the southwest bedroom and gave "specific permission to search the residence as well as his bedroom."

Sergeant Heath and other officers took Rodolfo-Chaidez to the apartment. Wearing tactical gear, the officers opened the door using a key Rodolfo-Chaidez provided, loudly announced their presence, and entered with guns drawn. They found Tapia-Rodriguez on the living room couch, handcuffed him, and performed a security sweep of the apartment. During the brief sweep, they saw "about a pound" of methamphetamine in plain view in the kitchen but observed no contraband in either

[1]The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska, adopting the findings and recommendation of the Honorable Susan M. Bazis, United States Magistrate Judge for the District of Nebraska.

of the two bedrooms. Sergeant Heath testified that, after the sweep, he and another officer spoke to Tapia-Rodriguez "to attempt to gain permission to search his bedroom which we believed was the northwest bedroom":

Q. What questions were initially posed to the defendant?

A. Name, asked him his name and if he lived there and where his bedroom was.

Q. Why did you ask him where his bedroom was?

A. If we were able to establish that he was . . . the one that, in fact, resided there, we were going to ask him for his permission to search it.

Q. Did he identify which bedroom was his?

A. . . . He indicated to the northwest bedroom.

Q. Any other questions asked of him at that time?

A. . . . [W]e asked him for permission to search the bedroom.

Heath testified he presented Tapia-Rodriguez the same consent form Rodolfo-Chaidez had signed, explained that the room would be searched if he signed the form, and that Tapia-Rodriguez "could tell us no." Tapia-Rodriguez signed the form and his bedroom was searched along with the rest of the apartment. In the closet, officers discovered a shoebox containing several pounds of suspected methamphetamine. They brought Tapia-Rodriguez into the bedroom and asked his name, where he was from, and how long he had lived in the apartment. The officers then gave Miranda warnings, and Tapia-Rodriguez declined to answer further questions.

After the hearing, Magistrate Judge Bazis recommended denying the motion to suppress statements Tapia-Rodriguez made before the <u>Miranda</u> warnings. The district court agreed in a lengthy Memorandum and Order, concluding as to this issue:

> Sergeant Heath's questions about Tapia-Rodriguez's residency and occupancy of the northwest bedroom did not -- under the circumstances -- seek any more information than the questions in [<u>United States v. Fleck</u>, 413 F.3d 883 (8th Cir. 2005)]. Sergeant Heath only asked questions that were reasonably related to obtaining consent to search. He did not ask any questions about what the officers might find or other details in the case. As the magistrate judge noted, when Sergeant Heath sought Tapia-Rodriguez's consent to search, the officers did not have any evidence of drugs or any other specific knowledge of criminal activity connected to the bedroom.

Tapia-Rodriguez then entered a conditional guilty plea to the first count in the indictment, reserving the right to appeal this suppression issue. The district court imposed a sentence of 87 months imprisonment that is not at issue on appeal.

## II. Discussion.

Under <u>Miranda</u>, a defendant's statements are inadmissible if they were the product of "custodial interrogation" and he was not properly advised of his right to be free from compulsory self-incrimination and to the assistance of counsel. 384 U.S. at 444. Here, the government concedes that Tapia-Rodriguez was "in custody." The issue is whether Sergeant Heath asking Tapia-Rodriguez (1) whether he lived in the apartment, and (2) which bedroom was his, was interrogation. The Supreme Court has defined "interrogation" as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980). The "should have known" standard is objective and "focuses primarily upon the perceptions of the suspect, rather than the intent of the police."

Id. "Thus, not all government inquiries to a suspect in custody constitute interrogation and therefore need be preceded by Miranda warnings." United States v. McLaughlin, 777 F.2d 388, 391 (8th Cir. 1985).

"A request for routine information necessary for basic identification purposes is not interrogation" unless "the government agent should reasonably be aware that the information sought . . . is directly relevant to the substantive offense charged." United States v. Ochoa-Gonzalez, 598 F.3d 1033, 1038 (8th Cir. 2010) (quotation omitted). Here, as in Ochoa-Gonzalez, asking Tapia-Rodriguez for his name was a routine identification request because his name "was not directly relevant to the substantive offense" the officers were investigating. Id. at 1039. Tapia-Rodriguez properly does not argue that asking for his name was interrogation. Likewise, asking Tapia-Rodriguez whether he lived in the apartment was "a request for routine information necessary for basic identification purposes" because the officers were "trying to understand and identify [his] presence" in an apartment they were about to search with Rodolfo-Chaidez's consent. United States v. Cowan, 674 F.3d 947, 958 (8th Cir.), cert. denied, 568 U.S. 922 (2012); accord United States v. Glover, 211 F. App'x 811, 814 (10th Cir.), cert. denied, 550 U.S. 951 (2007). Tapia-Rodriguez argues his answer to that question tied him to the crime, but a routine identification inquiry "is not interrogation under Miranda, even if the information turns out to be incriminating." United States v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996), quoting McLaughlin, 777 F.2d at 391. Thus, his response to this question was admissible.

Heath's follow-up question, asking Tapia-Rodriguez to identify his bedroom, presents a closer question. As the district court recognized, an essential aspect of this case is that the officers came to the apartment to conduct a consensual search. It is well established that a warrantless search may be justified by proof "that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). Rodolfo-Chaidez as co-occupant

obviously had authority to consent to a search of the common areas of the apartment and his own bedroom.  See id. at 171 n.7.  But a co-tenant's unrestricted consent to search leased property will not justify a warrantless search of a room "set aside for [the defendant's] own private use."  United States v. Heisman, 503 F.2d 1284, 1288 (8th Cir. 1974) (reversing conviction because, viewed objectively, the consenting co-tenant did not have "joint access or control" over defendant's room).  And here, Heath testified that Rodolfo-Chaidez did not claim common authority over the entire apartment; he identified a roommate and did not include the second bedroom in his consent to search.  Thus, when Tapia-Rodriguez identified himself as the roommate, the officers needed to determine, before searching a bedroom outside the scope of Rodolfo-Chaidez's consent, whether Tapia-Rodriguez occupied that bedroom and, if so, whether he would consent to its search.  See generally Wayne R. LaFave, et. al, 2 Crim. Proc. § 3.10(e) (4th ed. 2019).[2]

"We have never held that a request to search must be preceded by Miranda warnings, or that a lack of Miranda warnings invalidates a consent to search."  United States v. Payne, 119 F.3d 637, 643 (8th Cir.), cert. denied, 522 U.S. 987 (1997).  Indeed, it is well established that consenting or refusing to consent to a search is not subject to suppression under Miranda.  See, e.g., Cody v. Solem, 755 F.2d 1323, 1330 (8th Cir.), cert. denied, 474 U.S. 833 (1985).  Here, to avoid conducting an illegal warrantless search, the officers needed to determine whether Tapia-Rodriguez

---

[2]Because Rodolfo-Chaidez limited his consent to the common areas and his bedroom, this situation did not bring into play the general rule, reaffirmed in Georgia v. Randolph, that the police need not "take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received."  547 U.S. 103, 122 (2006); see United States v. Uscanga-Ramirez, 475 F.3d 1024, 1028 (8th Cir. 2007).  Of course, consistent with Heath's explanation when he asked Tapia-Rodriguez for consent to search the second bedroom, the decision in Randolph would have precluded a search if he refused to consent.  See 547 U.S. at 106 (a warrantless search is unreasonable if the defendant "is present at the scene and expressly refuses to consent," even if another co-occupant has consented to the search).

claimed to occupy the second bedroom and whether he would consent to the search. After Tapia-Rodriguez said he lived in the apartment, asking "will you consent to a search of your bedroom?" would not have been custodial interrogation. Similarly, the officers would not have violated Tapia-Rodriguez's rights under Miranda by asking Rodolfo-Chaidez "which bedroom does Tapia-Rodriguez occupy?" *before* asking Tapia-Rodriguez for consent to search that bedroom. We conclude the answer cannot be different simply because Heath instead asked Tapia-Rodriguez which bedroom was his.

In Rhode Island v. Innis, the Supreme Court in defining interrogation excluded words or actions "normally attendant to arrest and custody." 446 U.S. at 301. In South Dakota v. Neville, the Court held that inquiring whether a suspect will take a blood-alcohol test "is not an interrogation within the meaning of Miranda" because "police words or actions normally attendant to arrest and custody do not constitute interrogation." 459 U.S. 553, 564 n.15 (1983), quoting Innis, 446 U.S. at 301. In Pennsylvania v. Muniz, four Justices concluded that requests for "biographical data necessary to complete booking or pretrial services" were not interrogation because they were "reasonably related to the police's administrative concerns." 496 U.S. 582, 601-02 (1990) (opinion of Brennan, J.) (quotation omitted); see id. at 608 (opinion of Rehnquist, C.J.) (concluding on behalf of four Justices that Miranda did not apply because answers to those questions were not "testimonial"). In United States v. Gaston, the D.C. Circuit held that officers did not interrogate a defendant when they asked if he owned the house where they were executing a warrant search because Federal Rule of Criminal Procedure 41(f)(3)(A), which requires that the "officer executing the warrant . . . give a copy of the warrant and a receipt for the property taken" to the property owner, meant that the question was "reasonably related to the police's administrative concerns" under Miranda as construed in Muniz. 357 F.3d 77, 82 (D.C. Cir.), cert. denied, 541 U.S. 1091 (2004); cf. United States v. Peterson, 506 F. Supp. 2d 21, 25 (D.D.C. 2007) (distinguishing Gaston and suppressing the defendant's response to question asking which bedroom was his during warrant

search of the entire residence because the court could not discern an "administrative concern" justifying the question).

In our view, asking Tapia-Rodriguez which bedroom was his before asking for his consent to search falls within the purview of these cases because the police had a legitimate need for the information to ensure they were conducting a lawful consensual search. Of course, the issue is fact intensive. Here, as the district court recognized, it is significant that Sergeant Heath asked only questions that were reasonably related to obtaining consent to search, did not ask what the officers might find in the bedroom, and did not know from either the protective sweep or what Rodolfo-Chaidez had told them that there was contraband in the second bedroom. See United States v. Walker, 871 F. Supp. 1, 2 (D.D.C. 1994) (defendant identifying his bedroom during a warrant search was a statement "in response to a routine question, not one designed to elicit an incriminating response"). Therefore, as in United Statess v. Fleck, the question "was not the kind of investigative questioning -- intended to elicit an incriminating response -- that was at issue in Miranda." 413 F.3d at 892 n.2; compare United States v. Jackson, 852 F.3d 764, 773 (8th Cir. 2017). Moreover, Tapia-Rodriguez, who was not present when Rodolfo-Chaidez was arrested and interviewed, introduced no evidence that he "considered himself under interrogation" when asked these questions, and the circumstances do not support that inference. See United States v. Brown, No. 97-4676, 1998 WL 637413, at *3 (4th Cir. 1998), cert. denied, 525 U.S. 1185 (1999).

For these reasons, we conclude that neither of the two questions at issue constituted interrogation that required Miranda warnings. Therefore, the motion to suppress Tapia-Rodriguez's responses to those questions was properly denied. Accordingly, the judgment of the district court is affirmed.

KELLY, Circuit Judge, dissenting.

Ten armed law enforcement officers opened the front door to Tapia-Rodriguez's home, loudly announced their presence, and entered. They were there to search for evidence of drug trafficking based on firsthand information that drugs, cash, and a suspected drug trafficker would be there. The police had recently arrested Jose Rodolfo-Chaidez, who admitted that he kept methamphetamine and cash in the home and provided permission to search. Rodolfo-Chaidez told officers that his roommate, "Poncho," also was involved in drug trafficking.

When the officers entered the home, they found Tapia-Rodriguez watching TV in the living room and immediately handcuffed him. During a protective sweep of the premises, they found a pound of methamphetamine in the kitchen. Then, without providing Miranda warnings, Sergeant Heath asked Tapia-Rodriguez for his name, whether he lived in the house, and which bedroom was his. I agree that asking for Tapia-Rodriguez's name was a request for routine information that did not require Miranda warnings. But Heath's latter two questions were not such requests. In my view, these questions constituted interrogation, and Tapia-Rodriguez's un-warned answers should have been suppressed.

Miranda warnings are required "whenever a suspect is (1) interrogated (2) while in custody." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). An "interrogation" consists of any words or actions "reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). But interrogation does not include a request for consent to search. United States v. Saenz, 474 F.3d 1132, 1137 (8th Cir. 2007). Nor does interrogation include officer questions "reasonably related to the police's administrative concerns." Pennsylvania v. Muniz, 496 U.S. 582, 601–02 (1990). This means that a "request for routine information necessary for basic identification purposes" is not interrogation, even if that information later turns out to be incriminating. United States v. Brown, 101 F.3d

-9-

1272, 1274 (8th Cir. 1996) (cleaned up). Critically, however, these exceptions to Miranda do not apply when "the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged." Id. (cleaned up); see also Muniz, 496 U.S. at 602 n.14; United States v. Cowan, 674 F.3d 947, 958 (8th Cir. 2012).

Here, Heath reasonably should have known that his questions about where Tapia-Rodriguez lived and which bedroom was his were directly relevant to the offense he was investigating—drug trafficking—and thus likely to elicit an incriminating response. Heath is a narcotics officer who would understand that a suspect's apparent control over an area where drugs are found may constitute constructive possession, see, e.g., United States v. Finch, 630 F.3d 1057, 1060 (8th Cir. 2011), or be evidence of a drug-trafficking conspiracy. By the time Heath questioned Tapia-Rodriguez, officers were aware that (1) Rodolfo-Chaidez's roommate sold drugs; (2) Tapia-Rodriguez was the only person in the home when they arrived; and (3) a pound of methamphetamine was in the kitchen. At a minimum, then, Heath's question about whether Tapia-Rodriguez lived in the house was "directly relevant to the substantive offense" because it would connect Tapia-Rodriguez to the methamphetamine already found in the home. See Brown, 101 F.3d at 1274; see also Finch, 630 F.3d at 1060.

Moreover, because there were just two bedrooms in the home, Heath reasonably believed Tapia-Rodriguez was Rodolfo-Chaidez's roommate and that his bedroom would contain evidence of drug trafficking. See United States v. Hayden, 759 F.3d 842, 846 (8th Cir. 2014) (explaining that courts must give "due weight to inferences drawn by law enforcement officials"). Considering the information law enforcement knew at the time, both of Heath's disputed questions were directly relevant to the offense of drug trafficking and reasonably likely to elicit an

incriminating response. See Brown, 101 F.3d at 1274. This was interrogation. See Innis, 446 U.S. at 301; Cowan, 674 F.3d at 958.

This court's decision in United States v. Fleck, 413 F.3d 883 (8th Cir. 2005) does not require a different result. In Fleck, law enforcement suspected that a home owned by brothers Robert and Ken Fleck might contain stolen property. Id. at 888. Officers went to the house to ask "if they might look around." Id. One of the brothers answered the door, told the officers that he co-owned the entire house with his brother, and allowed them inside. Id. When the officers discovered a padlocked bedroom, they asked whose room it was and requested a key. Robert explained the room was both his and Ken's and provided a key. Id. After police found contraband inside the room, the Fleck brothers moved to suppress their statements under Miranda. Id.

We concluded that this questioning did not amount to interrogation—but not because the question was related to the officers' administrative purpose of obtaining consent to search. Instead, we said: "Though the officers asked a direct question of the brothers regarding the key to the bedroom, it was not the kind of investigative questioning—intended to elicit an incriminating response—that was at issue in *Miranda*." Id. at 892 n.2. This was because "[n]othing further regarding authority over the bedroom—and hence ownership of or authority over the guns found in it—was admitted by Robert in producing the key since the brothers had already told the officers they were co-owners of the entire house." Id. In other words, asking "Whose room?" was not likely to elicit an incriminating response because the Flecks had already volunteered that they co-owned the whole house. Id.

Questions about authority and control over a particular location do not fall outside the definition of "interrogation" simply because officers are interested in conducting a consensual search. See Brown, 101 F.3d at 1274; see also Cowan, 674 F.3d at 958 (recognizing that police questions that would otherwise be part of "a

-11-

routine, basic identification inquiry" become interrogation if the officer is reasonably aware that the information sought "is directly relevant to the substantive offense"). Instead, as the court notes, the task of determining whether police questioning constitutes interrogation is "fact intensive." Ante at 8. And here, as in Fleck, context matters. See Fleck, 413 F.3d at 892 n.2; see also United States v. Pacheco-Lopez, 531 F.3d 420, 423–24 (6th Cir. 2008) (explaining that courts must "carefully scrutinize" the facts of each case, because "even a relatively innocuous series of questions may, in light of the factual circumstances . . . , be reasonably likely to elicit an incriminating response" (cleaned up)).

When Heath asked Tapia-Rodriguez whether he lived in the home and which bedroom was his, the officers knew Rodolfo-Chaidez was involved in drug trafficking, they suspected his roommate of drug trafficking, and they knew there was a pound of methamphetamine in the home. With these facts, Heath should have known that his questions were directly relevant to the offense being investigated and would likely elicit incriminating responses from Tapia-Rodriguez.[3] Under these

---

[3]This conclusion is consistent with how other courts apply Miranda. In Pacheco-Lopez, for example, the Sixth Circuit suppressed Lopez's un-warned responses to questions about how and when he had arrived at a house because, in context, these questions were "reasonably likely to elicit an incriminating response." Pacheco-Lopez, 531 F.3d at 424. The police went to search a house for evidence of drug trafficking and arrived to find Lopez inside. Id. at 422. The officers knew that a shipment of cocaine connected to the house "had arrived from outside the state during the previous week." Id. Therefore, their questions to Lopez were "relevant to an investigation and [could not] be described as related *only* to securing the house or identifying the defendant." Id. (emphasis added); see also United States v. Smith, 3 F.3d 1088, 1098 (7th Cir. 1993) ("Where the question goes beyond a request for consent and inquires as to ownership of that which is searched, the inquiry crosses the threshold into testimonial incrimination and is therefore barred unless the safeguards of *Miranda* have been put in place."); United States v. Disla, 805 F.2d 1340, 1347 (9th Cir. 1986) (suppressing defendant's response to questions about where he lived because officer had preexisting knowledge of illegal activity at defendant's apartment).

-12-

circumstances, Heath's questions constituted interrogation and Tapia-Rodriguez's un-warned responses should be suppressed. See Cowan, 674 F.3d at 958; Brown, 101 F.3d at 1274. I respectfully dissent.

_____