# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-2066
_____

United States of America

*Plaintiff - Appellant*

v.

Mosley Jumon Williams

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 14, 2022
Filed: June 9, 2022
_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

An indictment charged Mosley Jumon Williams with three offenses: felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute a mixture or substance containing a detectible amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Williams moved to suppress items found during a warrantless search of the

apartment he shared with his girlfriend, including a gun, narcotics, bullets, and a digital scale. Adopting a magistrate judge's report and recommendation, the district court granted the motion as to the narcotics found in a black bag, concluding the search that led to the discovery of the narcotics exceeded the scope of his girlfriend's consent to search the apartment. As to the other evidence, the court denied the motion. The government filed this interlocutory appeal, asserting the district court erred when it focused on ownership of the bag rather than his girlfriend's authority to give consent for the search. We reverse.

## I.   BACKGROUND

On April 1, 2019, Detective James Bain arrested Williams on a warrant for an armed kidnapping. Detective Bain searched Williams and his car but failed to locate the gun that had been used in the alleged kidnapping. Suspecting that Williams might contact someone regarding the gun, Detective Bain monitored Williams' phone calls while he was being held on pretrial detention for the armed kidnapping charge. Law enforcement recorded a telephone call between Williams and his girlfriend, Wanda Wells. During the call, Wells asked Williams if he had left "the thing" at her residence. Williams confirmed and directed her to put it "inside of the closet and forget about it." Detective Bain understood "the thing" to be a reference to a gun. Upon further investigation, Detective Bain learned that Wells was the sole lessee of a one-bedroom apartment.

The next day, Detective Bain and three officers knocked on Wells' apartment door. Wells opened the door and answered the officers' questions. She informed the officers that her name was the only name on the lease but that she resided in the apartment with Williams, whom she described as her boyfriend. While Wells initially denied there was a firearm in the residence, she eventually admitted that she possessed a firearm registered in her name. Wells also admitted she allowed Williams to use her gun even though she was aware Williams was a previously convicted felon. Wells eventually agreed to show the officers where the gun was in

the apartment, escorting them to the bedroom and pointing out a gun located in a black bag hanging from the handle of the open bedroom door.

Detective Bain approached the bag and observed a firearm in plain view in the partially unzipped bag. Wells agreed to sign a Consent to Search, which granted the officers general permission to search the residence. Detective Bain opened the bag and found the .45 caliber handgun, a black plastic bag that he eventually determined contained about 14 grams of methamphetamine, and a letter addressed to Williams at a different address. On glass shelving in the bedroom, the officers observed in plain view a .45 caliber magazine with a live bullet inside, another .45 caliber bullet outside the magazine, a photograph of Williams, and a digital scale. Wells told the officers she had purchased the gun for Williams. Detective Bain seized the gun, the suspected methamphetamine, the letter, the magazine, the two bullets, and the scale.

Williams moved to suppress evidence obtained from the warrantless search of the bag, claiming Wells lacked authority to consent to the search. At an evidentiary hearing, Detective Bain testified that the black bag in question, which he described in his police report as a "man bag," was actually similar to a "woman's purse" that could be carried by both men and women. Given the broad consent form signed by Wells, Detective Bain testified that he believed he had Wells' consent to search the apartment and anything in it. Williams conceded the officers were authorized by Wells to search the common areas of the residence but argued the officers did not have consent to search the black bag. The government countered that Wells' verbal and written consent to search authorized the search of the bag because Wells, as the lessee of the apartment, had common authority over the premises, including the bag. The government also asserted that the evidence demonstrated the officers had a reasonable belief that Wells had authority over the bag and, in the alternative, the seizure of the gun and other items was constitutional under the plain view doctrine.

The magistrate judge found, and the district court adopted the finding, that when Detective Bain observed the black bag, it appeared to him to be a bag

belonging to a man. In reaching this finding, the court relied on Detective Bain's description in his police report as a "man bag," which was written closer in time to the search than his testimony at the hearing. The court determined that while Wells had actual and common authority over the apartment, it was neither clear from the evidence that Wells had common authority over the bag located in the bedroom, nor did the government satisfy its burden of showing Detective Bain had a good faith but mistaken belief that the bag belonged to Wells or that Wells jointly used the bag. The government appeals.

## II.    ANALYSIS

The question before us is whether Wells had apparent authority to consent to the search of the bag. We review facts supporting a motion to suppress for clear error and the legal conclusions based on those facts *de novo*. United States v. James, 353 F.3d 606, 612 (8th Cir. 2003). Third-party consent, including whether the consenter had common authority, is a question of fact. United States v. Almeida-Perez, 549 F.3d 1162, 1170 (8th Cir. 2008). We review *de novo* the legal question of whether the officers could reasonably believe that the consenter had common authority over the evidence in question. United States v. Amratiel, 622 F.3d 914, 916 (8th Cir. 2010).

The district court's determination turns on its finding that the bag was a "man bag." Detective Bain described the bag as a "man bag" in his report, prompting the district court to find that he could not have reasonably believed Wells had authority to authorize the search of the bag. Although Detective Bain described the item in question as a "man bag" in his report, he also testified at the suppression hearing that it was the type of bag commonly used by both men and women and that he did not know who owned the bag. Nowhere in the report does Detective Bain opine that the bag belonged to Williams. Photographic evidence in the record shows the bag is gender neutral. The district court clearly erred in finding the bag was a "man bag" and that law enforcement could not have reasonably believed Wells had common authority over the bag.

Consent is an exception to the warrant requirement, which may be given by a third party with common authority or apparent authority over the premises or effects. Id. at 915-16. The government bears the burden of proving by a preponderance of the evidence that the co-occupant had sufficient authority to provide consent. See United States v. Matlock, 415 U.S. 164, 177 (1974); United States v. Williams, 346 F.3d 796, 798-99 (8th Cir. 2003). A warrantless search is justified when officers reasonably rely on apparent authority of the third party, even if she lacked common authority. United States v. Munoz, 590 F.3d 916, 922 (8th Cir. 2010). For apparent authority, we examine whether "the facts available to the officer at the time" of consent would lead a person of reasonable caution to believe the consenter had authority over the item searched. James, 353 F.3d at 615 (citing Illinois v. Rodriguez, 497 U.S. 177, 188 (1990)). Common authority is determined from joint access, mutual use, and control, and its existence is a question of fact. Id. at 613. A co-occupant has authority to consent to a search of common areas. United States v. Tapia-Rodriguez, 968 F.3d 891, 895 (8th Cir. 2020). However, if officers "encounter circumstances that would put them on notice of limited authority, they may not ignore such signals." Almeida-Perez, 549 F.3d at 1172.

Based on the evidence in the record, Wells had apparent authority over the bag. At the time of consent, law enforcement officers knew: (1) Williams had directed Wells to move the gun owned by and registered to her to a specific place within the apartment; (2) Wells voluntarily led the officers to the location of the gun; and (3) Wells had access to the bag and never indicated it was Williams' bag or that her ability to use or access the bag was limited. As the sole lessee, Wells had actual and common authority over the apartment and consented to the search of the entire apartment. Where the gun was located—partially visible in the unzipped bag hanging on the door handle of their shared bedroom—was in a common area. The evidence is sufficient to lead a person of reasonable caution in the officers' situation to believe Wells had authority over the bag and could consent to a search of the bag for Fourth Amendment purposes.

## III. CONCLUSION

We reverse the district court's grant of the suppression motion, vacate the suppression order, and remand for proceedings consistent with this opinion.

_____