# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2357
_____

Erin Bulfin

*Plaintiff - Appellant*

v.

Becky Rainwater; Renita Hawkins; Maryanne Willis; Vanessa Duris; Philip
Wagenknecht, in their individual capacities; St. Louis County

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: February 14, 2024
Filed: June 17, 2024
_____

Before LOKEN, COLLOTON,[1] and KELLY, Circuit Judges.
_____

LOKEN, Circuit Judge.

Erin Bulfin brought this action asserting municipal liability claims against St.
Louis County, and Fourth Amendment unlawful seizure and numerous state law

_____

[1]Judge Colloton became chief judge of the circuit on March 11, 2024. See 28
U.S.C. § 45(a)(1).

claims against employees and a contract veterinarian of St. Louis County Animal Care & Control ("ACC"), after Bulfin's pet dog, Daisy, was transferred to the custody of the County Department of Public Health and euthanized at ACC. Ruling on cross-motions for summary judgment, the district court[2] granted summary judgment to the individual Defendants, concluding Bulfin's Fourth Amendment rights were not violated because Defendants reasonably relied on the apparent consent of Bulfin's husband, Edward Nea, to euthanize Daisy, and alternatively that these Defendants were entitled to qualified immunity because the alleged Fourth Amendment right was not clearly established. The court granted summary judgment in favor of the County on Bulfin's federal municipal liability claims and declined to exercise supplemental jurisdiction over Bulfin's state law claims. Bulfin appeals the dismissal of her federal § 1983 claims. "We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party." Bloodworth v. Kansas City Bd. of Police Comm'rs, 89 F.4th 614, 619 (8th Cir. 2023). Concluding the district court committed no error, we affirm.

## I. Background

Bulfin and Nea were married when she purchased Daisy in March 2014, with Nea present, and paid for the dog from a joint bank account. Daisy lived with Bulfin, Nea, and their children as a pet. On December 26, 2019, Daisy bit their daughter in the face, requiring hospitalization, stitches, and treatment. The next morning, after the daughter's release from the hospital, Bulfin called her veterinarian's office, reported the bite incident, and was told to contact ACC. Bulfin called ACC, reported that Daisy had bitten her daughter, and discussed her options with Defendant Rebecca Rainwater. While the details of the conversation are disputed -- whether it was limited to the need to quarantine Daisy for ten days under a local ordinance, or

---

[2]The Honorable John M. Bodenhausen, United States Magistrate Judge for the Eastern District of Missouri.

included Bulfin inquiring about having Daisy euthanized at ACC -- it is undisputed that at the end of the conversation Bulfin told Rainwater that her husband would bring Daisy to ACC that day.

Nea brought Daisy to ACC that afternoon. He told Defendant Renita Hawkins, who was working the animal intake desk, that Daisy had bitten his daughter the night before and that his wife had called ACC earlier. The conversations during Nea's visit are disputed. Hawkins testified, with some corroboration from others, that Nea insisted Daisy be euthanized that day because he did not want Daisy held in the shelter over the weekend. Hawkins also testified that Rainwater, her supervisor, came out and explained to Nea that animals that have bitten people are typically quarantined for ten days before being euthanized, but Nea insisted on immediate euthanasia. Nea testified he only spoke to Hawkins and told her that he wanted Daisy quarantined for ten days. It is undisputed that "Defendant Hawkins . . . explained the process and paperwork to Edward Nea."

Hawkins prepared two forms, an "Intake Form" and a "Bite Form." The Intake Form is a single-page, double-sided form used for the intake of an animal at ACC for any reason. It has numerous boxes to indicate whether the animal is owned or a stray and why it is being received. One box is labeled "(ORE) OWNER REQUESTS EUTHANASIA (Not Mandatory for Surrender)." There are spaces where the person conducting the intake can write in information including the name and address of the person surrendering the animal, the time the animal is received, and the reason for its surrender to ACC. Recording information Nea provided, Hawkins checked the pre-printed ORE box; boxes stating that Daisy was an owned animal brought in as a "bite case;" Nea's name and address; and Bulfin's phone number. Hawkins wrote January 6, 2020 on the line labeled "Quarantine End/ Date Sent to Lab," and noted that Daisy was assigned to kennel number 706, located in ACC's "bite quarantine room."

The Intake Form includes three separate boxes describing three types of authorization by the person surrendering the animal:

AUTHORIZATION FOR TRANSFER OF CUSTODY OF ANIMAL

I hereby transfer custody of the animal to Saint Louis County Department of Public Health to provide shelter and care, then adopt, transfer, field release, euthanize or otherwise dispose of under provisions of Ordinance Chapter 611. To my knowledge, no person has been bitten by this animal within the past 10 days.

AUTHORIZATION FOR RELINQUISHMENT OF RIGHTS TO OWNED ANIMAL

I, as the owner or custodian of the below described animal, hereby irrevocably relinquish ownership to Saint Louis County Animal Care & Control. I understand that the animal immediately becomes sole property of Animal Care & Control to adopt, transfer, field release, euthanize or otherwise dispose of the animal at the sole discretion of Animal Care & Control. To my knowledge, no person has been bitten by this animal within the last 10 days. I understand that Animal Care & Control is under no obligation to return or adopt the animal to me at any time.

AUTHORIZATION FOR RELINQUISHMENT OF RIGHTS TO OWNED ANIMAL FOR PURPOSE OF EUTHANASIA

I, as the owner or custodian of the described animal, hereby irrevocably relinquish ownership to Saint Louis County Animal Care & Control. I understand that the animal immediately becomes sole property of Animal Care & Control for the purpose of euthanasia and disposal of the animal. To my knowledge, no person has been bitten by this animal within the last 10 days.

It is undisputed that Nea signed the signature line beneath each of these authorizations. Nea claims he did not read the Intake Form and its authorizations, believed he was signing the form to place Daisy in a 10-day quarantine, and signed where Hawkins directed him to sign. There is no dispute that Nea was not rushed as he reviewed the form and could have read the authorizations had he so chosen.

On the Bite Form, based on information provided by Nea, Hawkins wrote Nea's contact information and the daughter's name under the "Victim Name" entry; listed "Edward/Erin Nea" as the victim's parents; and gave a short description of the bite incident, including the date. Under the "Date Quarantine Ends" box, Hawkins wrote January 6, 2020.

After signing the authorizations on the Intake Form, Nea took Daisy outside. ACC employee Clinton Wall approached and took Daisy back into the building. Wall testified that Nea was crying and talking to the dog, like many dog owners Wall has seen saying goodbye to their animals. Nea then left ACC.

Meanwhile, Hawkins passed Daisy's completed Intake Form to Rainwater, saying Hawkins believed Daisy should be quarantined for ten days because she had bitten someone. Rainwater told her that if an owner requests immediate euthanasia (ORE), ACC can honor the request. Rainwater learned that Defendant Dr. Philip Wagenknecht, an ACC contract veterinarian, was still at ACC conversing with Defendant Dr. Vanessa Duris, the Director of ACC. Rainwater asked Dr. Wagenknecht if he had time to perform one more euthanasia. Dr. Wagenknecht said yes, with assistance. Dr. Duris testified she does not recall being asked or granting permission for the euthanasia to proceed. Defendant Maryanne Willis agreed to assist Dr. Wagenknecht. She retrieved Daisy from the kennel and discovered by using a scanner that Daisy had an identifying microchip implant. Willis called the microchip company, which confirmed that Daisy's registered owner was "Erin Nea" at the address on Edward Nea's driver's license that Hawkins put on the Intake Form.

Willis gave this information to Rainwater, who authorized the euthanasia to proceed. Dr. Wagennecht euthanized Daisy. It is undisputed that Dr. Wagenknecht does not review an animal's intake paperwork prior to euthanizing; he simply performs euthanasias that ACC employees request.

The next morning, Bulfin went to ACC to pick Daisy up for home quarantine. Rainwater told her that Daisy was euthanized the day before. This lawsuit followed. Bulfin's complaint alleges numerous violations of state and federal law in thirty counts. Only her federal § 1983 claims are at issue on appeal, including municipal liability claims against the County alleging failure to train or supervise its employees and an unlawful pattern, practice, or custom of euthanizing animals in its custody.

## II. Claims Against the Individual Defendants

The Fourth Amendment protects against unreasonable searches and seizures of "persons, houses, papers, and effects" by government actors in both civil and criminal contexts. See Soldal v. Cook County, 506 U.S. 56, 67 (1992). A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." Id. at 61 (quotations omitted). Dogs are considered "effects" within the meaning of the Fourth Amendment, so any seizure of Daisy must be objectively reasonable to comply with the Fourth Amendment. Bloodworth, 89 F.4th at 626. Reasonableness "must be judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer." LeMay v. Mays, 18 F.4th 283, 287 (8th Cir. 2021). When ACC accepted custody of Daisy, that was not a seizure because it is undisputed Bulfin approved of Daisy being quarantined in ACC custody after biting her daughter. Bulfin instead claims that Daisy was seized when she was euthanized without consent and that the individual Defendants -- Rainwater, Hawkins, Willis, Dr. Duris, and Dr. Wagenknecht -- may each be held liable under 42 U.S.C. § 1983 because they were state actors who participated in Daisy's euthanasia, a constitutionally unreasonable seizure.

The individual Defendants are entitled to qualified immunity unless the evidence, viewed in the light most favorable to Bulfin, establishes a violation of her Fourth Amendment rights that was clearly established at the time of the violation. "Qualified immunity shields public officials . . . from liability and the burdens of standing trial if their conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hansen v. Black, 872 F.3d 554, 557 (8th Cir. 2017), cert. denied, 584 U.S. 979 (2018), quoting White v. Pauly, 580 U.S. 73, 78-79 (2017). It is an immunity from suit rather than a mere defense to liability, "effectively lost if a case is erroneously permitted to go to trial." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation omitted). A government official is "only liable for his or her own misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). "[T]he doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct." Bloodworth, 89 F.4th at 624 (quotation omitted; emphasis in original). "If we conclude that the alleged facts do not violate a constitutional right, then we need not address the second inquiry [whether the right was clearly established], and the defendant[s] will be entitled to qualified immunity." Ryno v. City of Waynesville, 58 F.4th 995, 1005 (8th Cir. 2023) (quotation omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 577 U.S. 7, 12 (2015).

When ACC accepted custody of Daisy from Nea, he signed a document expressly authorizing Daisy's euthanization. It is well established that "the consent of one who possesses common authority over the premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." United States v. Matlock, 415 U.S. 164, 170 (1974) (citation omitted, emphasis added). State actors need not take affirmative steps to find a potentially objecting co-owner "before acting on the permission they had already received." United States v. Tapia-Rodriguez, 968 F.3d 891, 895 n.2 (8th Cir. 2020), quoting Georgia v. Randolph, 547 U.S. 103, 122 (2006).

Following discovery, responding to cross motions for summary judgment, the district court concluded that no Fourth Amendment violation occurred. The court held that no reasonable jury could find that Nea lacked actual or at least apparent authority over Daisy when he signed the Intake Form authorizing euthanasia and turned Daisy over to ACC. However, the court noted, an initially lawful seizure can violate the Fourth Amendment if "its manner of execution unreasonably infringes possessory interests," quoting United States v. Jacobson, 466 U.S. 109, 124 (1984). Here, Bulfin did not personally request that Daisy be euthanized, and Bulfin's possessory interest in Daisy "may not have been extinguished by Nea's actions," creating a fact issue that "would typically preclude summary judgment." However, § 1983 liability is individual. After reviewing the record evidence of each individual Defendant's conduct, the court concluded that Bulfin failed to present evidence that would permit a reasonable jury to find that the conduct of any individual Defendant violated Bulfin's Fourth Amendment rights by interfering with her possessory interest in Daisy in an objectively unreasonable manner:

-- As to Hawkins, there is no evidence she unreasonably seized Daisy. She had no control over Daisy at ACC, had no authority to euthanize Daisy, and was not involved in the decision to euthanize. At most, Hawkins was negligent in filling out paperwork, which is not a constitutional violation.

-- As to Rainwater, there is no credible evidence she unreasonably relied on Nea's signed authorization requesting euthanasia of a pet dog that had bitten a child.

-- As to Dr. Wagenknecht, Dr. Duris, and Willis, the only information they had was that an owner requested euthanasia in a bite case. They acted accordingly. Their efforts to verify Daisy's ownership "were constitutionally sound."

Alternatively, the court concluded that the individual Defendants are entitled to qualified immunity because there is no clearly established authority holding "that

government officials . . . violate the Fourth Amendment by seizing and destroying an effect with the consent of a person who reasonably has actual or apparent authority." The district court further concluded Bulfin's municipal liability claims fail on the merits and because there was no underlying Fourth Amendment violation by any County actor. The court granted summary judgment in favor of all Defendants on the federal law claims and declined to exercise supplemental jurisdiction over Bulfin's state law claims. Bulfin appeals the grant of summary judgment to all Defendants on her federal claims.

**A.** On appeal, Bulfin first argues that the above-summarized third-party consent doctrine is an exception to the *search* clause of the Fourth Amendment and the district court erred in applying this exception to Daisy's *seizure*. Bulfin cites *no* federal authority supporting this contention. We conclude it is without merit. As the Supreme Court said in upholding the search *and seizure* of another type of effect, based on the consent of a shared user: "in allowing [his cousin to share use of a duffel bag] and in leaving it in his house, [the suspect] must be taken to have assumed the risk that [the cousin] would allow someone else to look inside." Frazier v. Cupp, 394 U.S. 731, 740 (1969). Here, though Nea chose not to join in Bulfin's lawsuit for tactical or other reasons, he was a co-owner with common authority over Daisy, their household pet. See United States v. Williams, 36 F.4th 792, 795-96 (8th Cir. 2022).

In United States v. Clutter, we upheld the seizure of defendant's computers and other personal items based on his father's consent, expressly recognizing that, "[e]ven when a third party lacks actual authority to consent to search *or seizure* of shared property or premises, the Fourth Amendment is not violated if the officers reasonably relied on the third party's apparent authority to consent." 674 F.3d 980, 983 (8th Cir.) (emphasis added), cert. denied, 569 U.S. 882 (2012); accord United States v. Beasley, 688 F.3d 523, 530 (8th Cir. 2012). Bulfin brushes Clutter aside as merely a *temporary* seizure and Beasley as a search case and argues we have never expressly *rejected* her contention. Maybe so. But other circuits have recognized that the third-

party consent exception applies to seizures as well as searches and have applied the same third-party consent analysis to both. See United States v. Stabile, 633 F.3d 219, 232 (3d Cir.), cert. denied, 565 U.S. 942 (2011); United States v. James, 571 F.3d 707, 714 (7th Cir. 2009); United States v. Hernandez-Zuniga, 215 F.3d 483, 487 (5th Cir. 2000). We agree with those decisions and with the district court's analysis.

**B.** Bulfin next argues that, even if Nea's consent was "binding" on her, disputed issues of material fact preclude summary judgment in favor of the individual Defendants on her Fourth Amendment seizure claims. The first disputed issue, she argues, is whether the Intake Form authorized Daisy's immediate destruction, or whether it "should be read as authorizing Daisy's temporary relinquishment to ACC for a 10-day quarantine" with a "notice" of ACC's right to euthanize if neither Bulfin or Nea reclaimed Daisy, consistent with Nea's testimony of his understanding when he left ACC. This contention is without merit.

As the district court explained, Chapter 611 of the St. Louis County Code of Ordinances, titled "The Animal Control Code," expressly provides that the Director of the St. Louis County Department of Health or his designee may impound a dog "whose person responsible has voluntarily and intentionally relinquished control to the Director," and may "immediately euthanize[]" the dog if the person responsible "has relinquished control of the animal to the County Animal Control Shelter and requests that it be euthanized." St. Louis Cty, Mo. Rev. Ordinances tit. VI, ch. 611, § 611.090(1)(k) and (7)(b). Another section of the Animal Control Code provides -- consistent with the overriding public health goal of preventing rabies -- that a dog that has bitten a human shall be confined for clinical observation for a period of ten days. The two ordinances are not inconsistent. And the existence of both does not establish that the individual Defendants committed an objectively unreasonable seizure in participating in the immediate euthanization of Daisy at the request of Edward Nea, who was a "person responsible" as defined in The Animal Control Code.

Ignoring on appeal that The Animal Control Code expressly authorized Owner Requested Euthanasia, Bulfin argues the Intake Form itself creates material fact disputes because Nea testified he requested a ten-day quarantine; Hawkins entered January 6, 2020 on the "Quarantine End" line, ten days after Daisy bit her daughter; and the authorizations falsely stated that "no person has been bitten by this animal within the past 10 days." But the relevant question is whether each individual Defendant was objectively reasonable in believing that Nea consented to Daisy's euthanasia. It is undisputed that this Intake Form was used for all animals brought in for ACC custody for any reason. Regarding Daisy, Hawkins and everyone who had any contact with Bulfin or Nea learned that the dog bit their daughter the prior day. So the conflicting statement on a pre-printed form is not material to the Fourth Amendment seizure issue.

The second disputed issue, Bulfin argues, is whether Nea's consent was knowing and voluntary when he signed the "Authorization for Relinquishment of Rights to Owned Animal for Purpose of Euthanasia" on the Intake Form. See generally United States v. Sanchez, 32 F.3d 1330, 1335-36 (8th Cir. 1994), cert. denied, 513 U.S. 1158 (1995). It is undisputed that Bulfin called ACC and told Rainwater Daisy had bitten her daughter and her husband would bring Daisy to ACC. Nea brought Daisy to ACC later that day. He described how Daisy had bitten his daughter, which Hawkins recorded on the Bite Form; his description aligned closely with what Bulfin told Rainwater in the earlier call. Hawkins prepared an Intake Form that had the "ORE" (Owner Requests Euthanasia) box checked. Nea reviewed the form and signed the "Authorization for Relinquishment of Rights to Owned Animal for Purpose of Euthanasia." Nea was provided the Intake Form and its authorizations to review, was not rushed as he reviewed the form, and was not coerced or threatened by anyone to sign the authorizations.[3] He then spent time with Daisy outside the

_____

[3]At oral argument, counsel for Bulfin represented that Hawkins and Dr. Duris testified that an owner wanting to surrender his or her dog to ACC for a ten-day

-11-

building and left the animal at ACC when he departed.  We agree with the district court that no reasonable jury could find the individual Defendants unreasonably relied on the clear language of the Authorization in determining Nea knowingly and voluntarily consented to Daisy's euthanasia.  State actors need not take affirmative steps to find a potentially objecting co-owner before acting on the permission they have received.  Tapia-Rodriguez, 968 F.3d at 895 n.2.

**C.** Bulfin further argues she presented sufficient evidence of each Defendant's direct or integral participation in the Fourth Amendment violations "as well as Defendant Duris' direct and supervisory liability and her integral participation." Like the district court, we disagree.

Hawkins testified that Nea insisted on euthanizing Daisy immediately; Nea testified he only requested a ten-day quarantine.  This fact issue is immaterial to Hawkins's individual § 1983 liability.  There is no evidence she was involved in the decision to euthanize Daisy, had authority to authorize or prevent euthanasia, or was involved in preparing Daisy for euthanasia.  Hawkins may or may not have made mistakes in filling out the Intake Form, but once the paperwork was complete, her involvement ended.  As the district court properly noted, negligence in filling out paperwork "does not rise to the level of a constitutional violation."

---

quarantine was *required* to sign all three authorizations before the dog could be left with ACC.  This is simply wrong.  Hawkins testified that an owner need not sign all three authorizations when dropping off an animal and only had to sign the "Authorization for Relinquishment of Rights to Owned Animal for Purpose of Euthanasia" authorization if requesting euthanasia.  No one testified that Nea was required to sign the  ORE Authorization to place Daisy into ten-day quarantine. Dr. Duris testified that to place a dog into a ten-day quarantine the owner has to "sign the *box* to give custody of the animal to us for that time."  Bulfin either misunderstood or blatantly misrepresented the deposition testimony on this point.

It was objectively reasonable for Defendant Rainwater to believe that Nea authorized ACC to euthanize Daisy when he signed the ORE Authorization, and that the Animal Control Code therefore authorized her to approve immediate euthanasia. She then sought out Dr. Wagenknecht to perform it that day and recruited Willis to confirm Daisy's ownership information and assist in the euthanasia.

Defendant Willis detected Daisy's microchip and investigated. She learned that Daisy's registered owner was "Erin Nea," whose address and phone number matched information Hawkins received from Nea and recorded on the Intake Form.[4] An animal control official would reasonably believe Bulfin and Nea were a married couple who shared ownership, possession, and control over Daisy, their family pet. There was nothing to suggest that Nea had only "limited authority" over Daisy and could not provide valid consent for the animal's euthanasia. Cf. United States v. Almeida-Perez, 549 F.3d 1162, 1172 (8th Cir. 2008).

There is no evidence that Dr. Duris or Dr. Wagenknecht reviewed the Intake Form before Daisy was euthanized. They simply relied on Rainwater's determination that euthanasia was requested by Daisy's owner. Dr. Duris cannot be liable in her supervisory capacity as ACC director because she did not directly participate and none of the other Defendants committed a constitutional violation. Bulfin presented no evidence contradicting Dr. Wagenknecht's testimony that, as an outside contract veterinarian, he does not review an animal's intake information but simply carries out euthanasias that ACC employees request him to perform.

**D.** Bulfin also argues the district court erred in ruling that the individual Defendants are protected by qualified immunity because the alleged Fourth Amendment violation was not a clearly established right. See, e.g., Dillard v.

---

[4]The district court noted, "tellingly, someone changed the ownership information for Daisy after she was euthanized" from Erin Nea to Erin Bulfin.

-13-

O'Kelley, 961 F.3d 1048, 1052 (8th Cir. 2020). Bulfin has not cited and we have not found any authority that demonstrates the Defendants violated any clearly established law. But in any event, we need not decide this issue. "If we conclude that the alleged facts do not violate a constitutional right, then we need not address the second inquiry [whether the right was clearly established], and the defendant will be entitled to qualified immunity." Ryno, 58 F.4th at 1005 (quotation omitted).

### III. Claims Against St. Louis County

Because we conclude that none of the St. Louis County employees or agents violated Bulfin's constitutional rights, the alleged failure to train or supervise and unconstitutional practice claims against the County require little discussion. "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." Moore v. City of Desloge, 647 F.3d 841, 849 (8th Cir. 2011). Bulfin has not argued that any exception to that rule applies in this case. Because no County employee or agent violated Bulfin's rights when Daisy was euthanized, her municipal liability claims against the County fail as well.

The judgment of the district court is affirmed.

_____