IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 10, 2026 Session

## STATE OF TENNESSEE v. JAY BURROUGHS CHANDLER

**Appeal from the Criminal Court for Sumner County**
**No. 2023-CR-17     Dee David Gay, Judge**

_____

**No. M2025-00381-CCA-R3-CD**

_____

MATTHEW J. WILSON, J., concurring.

## OPINION

I concur in the result reached by the majority. I write separately, however, because I disagree with the majority's analysis on three key points.

First, I do not agree that Defendant had a reasonable expectation of privacy in the unlocked, semi-transparent plastic bin located in an office shared by at least ten other people and accessible to restaurant employees. Ms. Kelso undertook two actions that potentially implicated the Fourth Amendment: (1) the search of the plastic drawers inside the office area of the restaurant and (2) the seizure of Defendant's phone from one of the drawers. Regarding the office area, Ms. Kelso testified that employees came in and out of the office to hang purses, backpacks, or jackets on the hooks and that there were two computer workstations where members of the management team could work. The door to the office was not locked. Although Defendant, as kitchen manager, sometimes utilized one of the workstations, he worked primarily behind the cook's line in the kitchen. Defendant and other members of the management team, including Ms. Kelso, used drawers in a plastic storage bin to hold mail and other items. The fronts of the drawers were semi-transparent such that many of the items inside could be plainly identified. Any other person who walked into the office could not only see into the drawers but, because they were not locked or secured in any way, could easily open them. Even though Defendant's name was on one of the drawers, the drawers themselves belonged to Texas Roadhouse and were available for use by members of the management team. Indeed, the drawers were regularly accessed by management staff, and Ms. Kelso stated that Defendant's girlfriend (a line cook) regularly placed her keys in Defendant's drawer. Ms. Kelso testified that she regularly accessed Defendant's drawer for business paperwork and that she did not need Defendant's permission to do so Certainly, no evidence suggested that Defendant could have excluded anyone from even the drawer with his name on it. *See United States v.*

*England*, No. 6:18-CR-056-CHB, 2020 WL 2110801, at *8 (E.D. Ky. May 4, 2020), *aff'd*, No. 21-5273, 2023 WL 1777533 (6th Cir. Feb. 6, 2023) (observing that even when the defendant "controlled access to the laptop" belonging to his employer, it was "undisputed that his use and control was always subject to the authority and control of" his supervisor/employer). .

The majority cites *Mancusi v. DeForte*, 392 U.S. 364 (1968), in support of its conclusion that Defendant had a reasonable expectation of privacy in what it deems the "shared office space." In my view, *Mancusi* is distinguishable. Initially, I disagree with the majority's conclusion that the "office" described by Ms. Kelso was the same as the shared office space described in *Mancusi*. There, DeForte "worked" and "spent 'a considerable amount of time in' the office" space at issue, which "consisted of one large room, which he shared with several other union officials." *Mancusi v. DeForte*, 392 U.S. 364, 368-69 (1968). The office was locked, and DeForte "could reasonably have expected that only those persons and their personal or business guests would enter the office, and that records would not be touched except with their permission or that of union higher-ups." *Id.* at 369. By contrast, Defendant worked primarily in the kitchen and used the office only occasionally, and there was no proof that he "spent considerable time" in the office. Additionally, the office was not locked. The Supreme Court has observed that employee "expectations of privacy in their offices, desks, and file cabinets . . . may be reduced by virtue of actual office practices and procedures." *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) (examining the expectation of privacy in the public workplace setting). The "actual office practices and procedures" for the space at issue here militate against a finding that Defendant had a reasonable expectation of privacy in either the space itself or in the drawer where his phone was found. Thus, I would conclude that under these circumstances, Defendant did not have a reasonable expectation of privacy in the drawer.

In *State v. Talley*, our supreme court concluded that, using the totality of the circumstances test, the defendant did not have a reasonable expectation of privacy in the common area of the condominium complex where he lived despite that he "had a 1/21st ownership interest in the common areas of the building and the front entrance was locked at all times" given that any resident "could grant entry into the common areas." *State v. Talley*, 307 S.W.3d 723, 734 (Tenn. 2010). Here, multiple people working at the restaurant had access to the drawers, and other members of the management team, including Ms. Kelso, routinely accessed drawers belonging to other team members. As our supreme court observed, five federal circuit courts have found that "there is no reasonable expectation of privacy in the common areas of an apartment building [because]tenants have little control over those areas, which are available for the use of other tenants, friends and visitors of other tenants, the landlord, delivery people, repair workers, sales people, postal carriers and the like." *Id.* at 733. In my view, the semi-transparent drawers are analogous to the

common areas of an apartment complex in that they exist for the use of the management team but are not areas that fall within the exclusive control of any member of the team.

Moreover, even if I could agree that Defendant maintained a reasonable expectation of privacy in the drawer, I agree with the trial court that Ms. Kelso shared common authority over the drawer and, accordingly, could have—and did—consent to the seizure of any item therein. The question here, as the court observed in *England*, is "was it reasonable to expect that" Ms. Kelso (or another employee) might consent to the search of the drawers such "that Defendant assumed that risk?" *England*, 2020 WL 2110801, at *8 I would conclude, under the facts of this case, that Defendant assumed the risk of others consenting to a search and that he "could not have expected" that the drawer "was his personal property, free of any type of control by his employer." *Id.* at *5 (citation omitted). Valid consent exists when given "either by the individual whose property is searched or by a third party who possesses common authority over the premises." *State v. Ellis*, 89 S.W.3d 584, 592 (Tenn. Crim. App.2000) (citations omitted). "Co-user consent is effective because the act of sharing property frustrates the owner's reasonable expectation of privacy with regard to the co-user." *United States v. King*, 604 F.3d 125, 136 (3d Cir. 2010) (holding that roommate's consent to search and seizure of hard drive defendant placed in shared computer was effective against defendant because defendant "assumed the risk that" roommate would consent to its seizure (citing *Georgia v. Randolph*, 547 U.S. 103, 128 (2006) (Roberts, C.J., dissenting)). The principle of common authority or third-party consent

> does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock*, 415 U.S. 164, 172 n. 7 (1974); *see Frazier v. Cupp*, 394 U.S. 731, 740 (1969) (joint use of duffel bag validated third party's consent to search).

Under the circumstances of this case, I would conclude that Detective Chambers' request did not turn Ms. Kelso into a government agent such that her search of the drawers and seizure of the phone violated the Fourth Amendment. The majority correctly observes that our supreme court adopted a two-pronged test for when a private person qualifies as a state agent. Here, Detective Chambers asked Ms. Kelso to see if Defendant's phone was inside the restaurant, but he did not ask her to search a particular area and, importantly, he did not ask her to seize the phone. Instead, Ms. Kelso made the decision to go into the office, retrieve Defendant's phone from the drawer, and bring it to the detective. Based upon the facts adduced below, it would be just as reasonable to conclude that Detective

Chambers intended for Ms. Kelso search kitchen areas in plain view as it would be to conclude that he intended for her to search an area that the police could not access without a warrant. As the Sixth Circuit has explained, "[t]he private-search doctrine was imposed to prevent the police from *covertly deputizing private citizens to break the law*, thereby circumventing the state-action requirement and the Fourth Amendment's strictures." *United States v. Lang*, 717 F. App'x 523, 541 (6th Cir. 2017). Only "when an ordinary citizen *invades another's privacy* at the government's request and for the government's benefit" does he or she "become[] a *government agent*." *Id.* (first citing *United States v. Boumelhem*, 339 F.3d 414, 425 (6th Cir. 2003); and then *United States v. Hardin*, 539 F.3d 404, 418-19 (6th Cir. 2008)) (second emphasis in *Lang*). In my view, this situation is analogous to that in *Coolidge v. New Hampshire*, where, upon being asked about the presence of any guns in the home and the clothing Coolidge had been wearing on the previous evening, Coolidge's wife went into the couple's bedroom, retrieved the guns and clothing, and produced them for the police. *Coolidge v. New Hampshire*, 403 U.S. 443, 488-89 (1971). There, the Supreme Court found no Fourth Amendment violation. *Id.* at 489; *see also United States v. Jacobsen*, 466 U.S. 109, 119-20 (1984) ("The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment." (first citing *Coolidge,* 403 U.S. at 487-90; and then citing *Burdeau v. McDowell,* 256 U.S. 465, 475-76 (1921)). I see no discernable difference between Detective Chamber's question whether Defendant's phone might be in the restaurant and the questions posed by police in *Coolidge*. Like Coolidge's, wife, who searched an area in which she had co-equal access and control, Ms. Kelso only searched an area in which she shared the same degree of access and control as Defendant.

Additionally, I think that it is important that although Ms. Kelso seized Defendant's phone and gave it to the police, neither Ms. Kelso nor the police searched the *contents* of Defendant's phone without a warrant. As Justice Scalia stated when writing for the majority in *Arizona v. Hicks*, "the interest protected by the Fourth Amendment injunction against unreasonable searches is quite different from that protected by its injunction against unreasonable seizures." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987) (citing *Texas v. Brown,* 460 U.S. 730, 747-48 (1983) (Stevens, J., concurring)). Justice Stevens explained:

> Although our Fourth Amendment cases sometimes refer indiscriminately to searches and seizures, there are important differences between the two that are relevant to the plain view doctrine. The Amendment protects two different interests of the citizen—the interest in retaining possession of property and the interest in maintaining personal privacy. A seizure threatens the former, a search the latter. As a matter of timing, a seizure is usually preceded by a search, but when a container is involved the converse is often true. Significantly, the two protected interests are not always present to the same extent; for example, the seizure of a locked

suitcase does not necessarily compromise the secrecy of its contents, and the search of a stopped vehicle does not necessarily deprive its owner of possession.

*Brown*, 460 U.S. at 747-48 (Stevens, J., concurring). "[O]ther circuits have recognized that the third-party consent exception applies to seizures as well as searches and have applied the same third-party consent analysis to both." *Bulfin v. Rainwater*, 104 F.4th 1032, 1040 (8th Cir. 2024) (applying third-party consent analysis to seizure of family pet (first citing *United States v. Stabile*, 633 F.3d 219, 232 (3d Cir.), *cert. denied*, 565 U.S. 942 (2011); then *United States v. James*, 571 F.3d 707, 714 (7th Cir. 2009); and then *United States v. Hernandez-Zuniga*, 215 F.3d 483, 487 (5th Cir. 2000)). Here, the seizure of Defendant's phone did not "compromise the secrecy of its contents," which were only searched after the police obtained a warrant. "[A] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Jacobsen,* 466 U.S. at 113. Because Defendant was in jail when his phone was seized by Ms. Kelso and given to detectives, I would conclude that the "temporary seizure of the [phone] while the officers applied for a search warrant did not meaningfully interfere with his possessory interests." *See United States v. Clutter*, 674 F.3d 980, 984 (8th Cir. 2012) (holding that the defendant's father [a former policeman] had common authority over the defendant's computers inside the family home such that he could consent to their seizure even if he did not have common authority over the contents of the computers).

The police had probable cause to believe that Defendant's phone would contain evidence of a crime because he had been observed using a phone to record himself having sex with a sixteen-year-old coworker. *See United States v. Respress*, 9 F.3d 483, 486 (6th Cir. 1993) (stating that "because the officers obtained no new investigatory information between the time of the seizure and the time they applied for the search warrant, if there was probable cause to *search* the suitcase, there was ipso facto probable cause to *seize* the suitcase"). "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701, 703 (1983) (approving brief seizure "to pursue further investigation" when "the authorities possess specific and articulable facts warranting a reasonable belief that a traveler's luggage contains narcotics"). The exception in this case was Ms. Kelso's voluntary consent to the seizure of the phone, which was in the drawer in which Defendant had no reasonable expectation of privacy and over which Ms. Kelso had common authority. *See Fernandez v. California*, 571 U.S. 292, 299-300 (2014) (stating that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared") (citation

omitted); *see also State v. Woods,* 806 S.W.2d 205, 209 (Tenn. 1990) ("A valid consent may be given by third persons who have some type of joint authority over the area to be searched."); *cf. Brown*, 460 U.S. at 738 (stating that "'plain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment").

Second, because I believe that the seizure of Defendant's phone was valid, I do not believe it is necessary to engage in an analysis of whether the police would have inevitably discovered the phone during their investigation. Further, because neither party has raised the issue of inevitable discovery on appeal, I believe that we are precluded from engaging in such an analysis sua sponte. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (stating that "[i]n our adversarial system of adjudication, we follow the principle of party presentation" whereby the parties "frame the issues for decision" and the court serves as a "neutral arbiter of matters the parties present" (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)).

Third, because I believe that the initial seizure of Defendant's phone passes constitutional muster, no constitutional issue arises from the inclusion of information observed on the phone in the affidavit in support of the warrant to search Defendant's residence. I disagree with the majority's assessment of the sufficiency of the affidavit, and with the inclusion of the information gleaned from Defendant's phone, under our deferential standard of review, it is my view that the warrant contained sufficient information to support the finding of probable cause to search the residence and that the trial court did not err by denying the motion to suppress evidence seized from the residence. *See State v. Tuttle*, 515 S.W.3d 282, 300 (Tenn. 2017) (observing that we "afford 'great deference' to a magistrate's determination that probable cause exists." *Id.* at 300 (citations omitted).

For these reasons, I concur in the results regarding the trial court's denial of the motion to suppress. I join the majority's opinion regarding the remand to the trial court for a new sentencing hearing for Defendant.

_____
s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
